[No. 41584-4-II.   Division Two.   June 5, 2012.]

*In the Matter of the Detention of* M.K.

*Lise Ellner*, for appellant.

*Robert M. McKenna, Attorney General*, and *Katy A. Hatfield* and *Robert A. Antanaitis, Assistants*, for respondent.

¶1 VAN DEREN, J. — MK[1] appeals a trial court order involuntarily committing him to Western State Hospital (WSH) for up to 180 days of mental health treatment, asserting that substantial evidence does not support the determination that he is gravely disabled and the resulting commitment order. The State responds that MK's appeal is moot because the period of commitment under the challenged order has expired. Alternatively, the State responds that substantial evidence supported the trial court's involuntary commitment order. Because an involuntary commitment order has collateral consequences for future commitment determinations, we hold that MK's appeal is not moot. Additionally, because the trial court's sparse findings do not support the trial court's determination that MK is gravely disabled, we vacate the involuntary commitment order.[2]

## FACTS

¶2 After his arrest on September 18, 2009, for criminal trespass and obstructing a police officer, MK was involuntarily detained at WSH for a 14-day mental health evaluation and for involuntary mental health treatment under RCW 71.05.310 and .320. WSH staff determined that MK suffered from schizoaffective disorder bipolar type and that he exhibited antisocial personality traits. Following an interim 90-day commitment, on January 4, 2010, the supe-

---

[1] Under Court of Appeals Division Two General Order 1992-3, the clerk shall recaption an appeal from an involuntary commitment proceeding by using the subject's initials instead of his or her name.

[2] After we issued our opinion in this case, the State moved for reconsideration, pointing out that our reliance on amendments to chapter 71.05 RCW that did not take effect until 2015 was erroneous. RCW 71.05.245 (effective July 1, 2015); LAWS OF 2011, 2d Spec. Sess., ch. 6, § 1; LAWS OF 2010, ch. 280, §§ 3, 5, at 2230-31. Although the legislature's 2010 amendment to RCW 71.05.245 was to take effect on January 1, 2012, in 2011 the legislature delayed implementation of the amendment until July 15, 2015. LAWS OF 2011, 2d Spec. Sess., ch. 6, § 1; LAWS OF 2010, ch. 280, § 3, 5, at 2230-31. We appreciate the State's notification and that it had access to updated legal resources that showed the delayed implementation of this change first adopted in the regular session of the legislature in 2010. Due to severe cuts in the legal resources budget available to courts in Washington, our court did not have the same type of direct access to late legislative amendments.

rior court committed MK for 180 days of involuntary mental health treatment at WSH under RCW 71.05.320, concluding that MK met RCW 71.05.020(17)'s definition of "gravely disabled." Clerk's Papers (CP) at 35. MK stipulated to the trial court's January 4 involuntary commitment order.

¶3 On June 14, 2010, WSH staff members Gregory Kramer, PhD, and Lanna Moore-Duncan, MD, filed a petition to involuntarily commit MK for an additional 180 days under chapter 71.05 RCW. On August 4, 2010, WSH staff members Joseph Wainer, MD, and Walter Tunstall, PhD, filed an amended petition to involuntarily commit MK for 180 days under the same statute. The June 14 and August 4 petitions alleged that MK was gravely disabled and that as a result of his mental disorder, he continued to present a likelihood of serious harm. The petitions further alleged that "no less restrictive alternatives to detention" were in MK's best interests because he "require[d] intensive, supervised 24-hour restrictive care." CP at 38, 48.

¶4 The trial court held a hearing on the involuntary commitment petitions on November 15, 2010, under chapter 71.05 RCW. It concluded that MK was gravely disabled and, on November 15, ordered an additional 180 days of involuntary commitment to WSH for further treatment.[3] Other than a brief jurisdictional statement, the entirety of the trial court's brief findings of fact state:

**Findings:** The Court finds by ☐ a preponderance of the evidence

☒ clear, cogent and convincing evidence

that the Respondent:

---

[3] The trial court referred to the legal conclusion of grave disability as a "finding." We treat incorrectly labeled findings as conclusions of law if they resolve the ultimate issue. *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 340, 24 P.3d 424 (2001).

When petition was filed, seemed to be responding to internal stimuli, impulsive, grandiose themes, threatening to peers[,] went on unauthorized leave. Assaultive on return, impaired judgment [and] insight, continues with grandiose themes, intrusive, rambling speech.

**Diagnosis:** Schizoaffective Disorder Bipolar type . . . Antisocial Personality traits

And that, as a result of a mental disorder, the Respondent presents:
   ☐ a likelihood of serious harm to others;
   ☐ a likelihood of serious harm to self;
   ☒ is gravely disabled;[4]
   ☐ was taken into custody after having been determined incompetent pursuant to RCW 10.77 and has committed acts constituting a felony (although criminal charges have been dismissed) and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts.

**Less Restrictive Alternatives:** Less Restrictive Alternatives to involuntary detention

---

[4] Although denoted as a finding of fact, because this is a legal conclusion regarding the ultimate issue, we treat it as the trial court's conclusion. *Inland Foundry*, 106 Wn. App. at 340. The form employed at the commitment hearing erroneously labels the grave disability conclusion as a fact and labels the subsequent order of commitment as the conclusion of law. Confusion about whether the trial court's rulings on grave disability are findings of fact or conclusions of law is understandable, given our Supreme Court's interchangeable reference to the rulings as a finding and a conclusion in *In re Detention of LaBelle*, 107 Wn.2d 196, 728 P.2d 138 (1986). *See, e.g., LaBelle*, 107 Wn.2d at 208 ("whether there was sufficient evidence in each of the cases to support the trial court's *finding* that appellants were gravely disabled" (emphasis added)), 209 ("trial court's *findings* of 'grave disability' " (emphasis added)), 214 ("the trial court *concluded* that Richardson was gravely disabled" (emphasis added)), 215 ("trial court's *findings*" (emphasis added)), 219 ("The findings do not indicate the factual bases for the trial court's *ultimate conclusion of grave disability*." (emphasis added)), 220 ("At the very least, the *findings should indicate the factual basis underlying the court's conclusion that a person is 'gravely disabled.'* " (emphasis added)). Because whether someone is gravely disabled is the ultimate issue to be determined, it is properly denoted a conclusion of law. Clear, cogent, and convincing evidence means *"the ultimate fact in issue* must be shown by evidence to be 'highly probable.' " *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973) (emphasis added) (quoting *Supove v. Densmoor*, 225 Or. 365, 372, 358 P.2d 510 (1961)).

☐ are
☒ are not in the best interests of the Respondent or others.

CP at 66.

¶5 The conclusions of law state, "The Respondent shall be detained for involuntary treatment or shall be treated under less restrictive alternatives per the Order Detaining Respondent below." CP at 67. The trial court concluded that the evidence was not clear, cogent, and convincing that MK presented a danger to others.

¶6 MK timely appeals the involuntary commitment order based on grave disability.

## ANALYSIS

### MOOTNESS

¶7 As an initial matter, the State asserts that we should decline to review the trial court's November 15 180-day involuntary commitment order because MK's commitment period under the challenged order has expired and, thus, his appeal from the order is moot. Because an involuntary commitment order may have adverse consequences on future involuntary commitment determinations, we disagree and address MK's appeal on the merits.[5]

¶8 Generally, we will dismiss an appeal where only moot or abstract questions remain or where the issues the parties raised in the trial court no longer exist. *Norman v. Chelan County Pub. Hosp. Dist. No. 1*, 100 Wn.2d 633, 635, 673 P.2d 189 (1983). An appeal is moot where it presents merely academic questions and where this court can no longer provide effective relief. *See, e.g., In re Cross*, 99

---

[5] We may also address a moot issue "if it involves matters of continuing and substantial public interest." *In re Det. of Swanson*, 115 Wn.2d 21, 24, 793 P.2d 962 (1990). Our Supreme Court has held that " 'the need to clarify the statutory scheme governing civil commitment is a matter of continuing and substantial public interest.' " *LaBelle*, 107 Wn.2d at 200 (quoting *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984)). Thus, we could address MK's appeal on the merits under this measure as well.

Wn.2d 373, 376-77, 662 P.2d 828 (1983). An individual's release from detention does not render an appeal moot where collateral consequences flow from the determination authorizing such detention. *See, e.g., Born v. Thompson*, 154 Wn.2d 749, 762-64, 117 P.3d 1098 (2005); *Habeas Corpus of Monohan v. Burdman*, 84 Wn.2d 922, 925, 530 P.2d 334 (1975). In the case of civil commitments under chapter 71.05 RCW, the trial court is directed to consider, in part, a history of recent[6] prior civil commitments; thus, each order of commitment entered up to three years before the current commitment hearing becomes a part of the evidence against a person seeking denial of a petition for commitment. *See* RCW 71.05.012 ("[C]onsideration of prior mental history is particularly relevant in determining whether the person would receive, if released, such care as is essential for his or her health or safety."); RCW 71.05.212 ("When[ ] . . . conducting an evaluation under this chapter, consideration shall include all reasonably available . . . records regarding . . . [p]rior commitments under this chapter."); RCW 71.05.245. Accordingly, each commitment order has a collateral consequence in subsequent petitions and hearings, allowing us to render relief if we hold that the detention under a civil commitment order was not warranted.

¶9 The legislature's use of "recent history evidence" to support involuntary commitments appears to begin with our Supreme Court's decision in *In re Detention of LaBelle*, 107 Wn.2d 196, 206-07, 728 P.2d 138 (1986), which held:

> By permitting intervention before a mentally ill person's condition reaches crisis proportions, [former] RCW 71.05.020(1)(b) [(1979)] enables the State to provide the kind of continuous care and treatment that could break the cycle and restore the individual to satisfactory functioning. Such intervention is consonant with one of the express legislative purposes of the involuntary treatment act, which is to "provide continuity of care for persons with serious mental disorders". [Former] RCW 71.05.010(4) [(1973)].

---

[6] Under RCW 71.05.245, " 'recent' " history of prior commitments "refers to the period of time not exceeding three years prior to the current hearing."

¶10 *LaBelle* also provided careful guidelines for the kind of evidence that can be used to show that a person is gravely disabled:

[W]hen the State is proceeding under the gravely disabled standard of [former] RCW 71.05.020(1)(b), it is particularly important that the evidence provide a factual basis for concluding that an individual "manifests severe [mental] deterioration in routine functioning". Such evidence must include recent proof of significant loss of cognitive or volitional control. In addition, the evidence must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety.

107 Wn.2d at 208 (third alteration in original). Additionally, *In re Meistrell*, 47 Wn. App. 100, 108, 733 P.2d 1004 (1987) held that recent past mental history is relevant in determining present and immediate future mental behavior.

¶11 In response to *LaBelle* and *Meistrell*, in 1997, the legislature made significant changes to chapter 71.05 RCW, including clarifying its intent regarding a trial court's consideration of prior involuntary commitments in making an involuntary commitment decision:

It is the intent of the legislature to enhance continuity of care for persons with serious mental disorders that can be controlled or stabilized in a less restrictive alternative commitment. Within the guidelines stated in [*LaBelle*], the legislature intends to encourage appropriate interventions at a point when there is the best opportunity to restore the person to or maintain satisfactory functioning.

For persons with a prior history or pattern of repeated hospitalizations or law enforcement interventions due to decompensation, the consideration of prior mental history is particularly relevant in determining whether the person would receive, if released, such care as is essential for his or her health or safety.

Therefore, the legislature finds that for persons who are currently under a commitment order, *a prior history of decompensation leading to repeated hospitalizations or law*

*enforcement interventions should be given great weight in determining whether a new less restrictive alternative commitment should be ordered.*

RCW 71.05.012 (emphasis added); *see* FINAL B. REP. on Substitute S.B. 5562, 55th Leg., Reg. Sess. (Wash. 1997); *see also In re Det. of C.K.*, 108 Wn. App. 65, 71-73, 29 P.3d 69 (2001).

¶12 As part of the major overhaul of chapter 71.05 RCW, in 1997, the legislature commissioned a task force on mentally ill offenders that issued recommendations and the legislature made another round of sweeping amendments to the statute in 1998 and 1999 based on those recommendations, including adopting RCW 71.05.245, which states:

> In making a determination of whether there is a likelihood of serious harm in a hearing conducted under RCW 71.05.240 or 71.05.320, the court shall give great weight to [any evidence before the court regarding[7]] whether the person has: (1) A recent history of one or more violent acts; or (2) *a recent history of one or more commitments under this chapter or its equivalent provisions under the laws of another state which were based on a likelihood of serious harm.* The existence of prior violent acts or commitments under this chapter or its equivalent shall not be the sole basis for determining whether a person presents a likelihood of serious harm.

(Emphasis added.) *See* FINAL B. REP. on Second Substitute S.B. 6214, 55th Leg., Reg. Sess. (Wash. 1998).

¶13 Although the current form of RCW 71.05.245[8] addresses only the trial court's use of prior history of commit-

---

[7] The bracketed section was added in 1999. LAWS OF 1999, ch. 13, § 6, at 74.

[8] In 2010, the legislature amended the statute again to include commitments based on a finding of grave disability:

> (1) In making a determination of whether a person is gravely disabled or presents a likelihood of serious harm in a hearing conducted under RCW 71.05.240 or 71.05.320, the *court must consider the symptoms and behavior of the respondent in light of all available evidence concerning the respondent's historical behavior.*
>
> (2) *Symptoms or behavior which standing alone would not justify civil commitment may support a finding of grave disability or likelihood of serious*

ments based on a finding of likelihood of serious harm in making a commitment determination based on a finding of likelihood of serious harm and does not address commitments based on a finding of grave disability, under *LaBelle* and *Meistrell*, prior commitments based on a finding of grave disability are also relevant to future commitment determinations.

¶14 Moreover, our legislature has stated its intent that "prior mental history is particularly relevant in determining whether [an involuntarily committed individual] would receive, if released, such care as is essential for his or her health or safety." RCW 71.05.012. Additionally, RCW 71.05-.212 directs that mental health professionals conducting evaluations under chapter 71.05 RCW to consider records of prior commitments.

¶15 Thus, under *LaBelle, Meistrell*, and provisions of chapter 71.05 RCW, it is clear that MK's appeal of his involuntary commitment order is not moot, despite the treatment period in the challenged order having expired, because a trial court presiding over future involuntary commitment hearings may consider MK's prior involuntarily commitment orders when making its commitment determination. And the State has filed an additional commitment petition against MK. Here, we may provide effective relief from an expired involuntary commitment order that was not supported by clear, cogent, and convincing

---

harm when: (a) Such symptoms or behavior are closely associated with symptoms or behavior which preceded and led to a past incident of involuntary hospitalization, severe deterioration, or one or more violent acts; (b) these symptoms or behavior represent a marked and concerning change in the baseline behavior of the respondent; and (c) without treatment, the continued deterioration of the respondent is probable.

. . . .

For the purposes of this subsection "recent" refers to the period of time not exceeding three years prior to the current hearing.

RCW 71.05.245 (effective July 1, 2015) (emphasis added); Laws of 2011, 2d Spec. Sess., ch. 6, § 1; Laws of 2010, ch. 280, § 3, at 2230-31. Because the legislature's amendment to RCW 71.05.245 does not take effect until July 15, 2015, more than three years after M.K.'s November 15, 2010, commitment order, we do not rely on the amendment in our mootness analysis.

evidence, by vacating the commitment order to ensure that a trial court will not rely on it in subsequent involuntary commitment determinations.[9] Accordingly, we address the merits of MK's appeal.

¶16 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WORSWICK, C.J., and ARMSTRONG, J., concur.

---

[9] Such review and potential relief is available sooner for the relatively short commitment orders through revision motions in superior court. RCW 2.24.050.