# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68469-8-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| A.T., | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: <u>September 16, 2013</u> |
|  | ) |  |

Cox, J. – A.T. challenges his involuntary 90-day commitment under RCW 71.05.280. He contends that there was insufficient evidence to support the conclusion that he was "gravely disabled." We disagree and affirm.

In January 2012, Seattle Police brought A.T. to Psychiatric Emergency Services at Harborview Medical Center after he was found running naked in cold weather. A.T. was committed for involuntary treatment for 14 days. This was A.T.'s third hospitalization since December 2011.

The State then filed a petition to commit A.T. for an additional 90 days of involuntary treatment. The petition alleged that A.T. was "gravely disabled" due to a mental disorder.

At the trial, the State presented testimony from Harborview psychiatrist, Dr. Sharon Romm, and from Harborview Social Worker, Christine Winther. These two expert witnesses testified to their interactions with A.T., their observations of A.T.'s behavior, and detailed information contained in A.T.'s

charts. Both experts expressed the opinion that A.T. was not ready for a less restrictive setting.

A.T. testified that if he were to leave the hospital, he would go to his mother's house. A.T. also believed that he would be able to obtain employment.

The court entered findings of fact and conclusions of law. It found the testimony of both expert witnesses to be credible and incorporated their testimony into its findings. The court concluded that A.T. was gravely disabled and entered an order committing him for an additional 90 days.

A.T. appeals.

## SUFFICIENCY OF THE EVIDENCE

A.T. argues that the trial court's findings of fact are not supported by substantial evidence, and these findings do not support its conclusion that A.T. was "gravely disabled." We disagree.

A person is "gravely disabled" if "as a result of a mental disorder," he or she either:

> (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.[1]

---

[1] RCW 71.05.020(17).

Under either definition, the potential for harm must be "'great enough to justify such a massive curtailment of liberty.'"[2] Under subsection (a), the standard on which the trial court exclusively relied in this case, the danger of serious physical harm need not be evidenced by recent, overt acts.[3] Instead, it "usually arises from *passive* behavior – i.e., the failure or inability to provide for one's essential needs."[4] A person's "essential needs" may include food, clothing, shelter, and medical treatment.[5] Finally, the State must present "recent, tangible evidence of failure or inability to provide for such essential human needs . . . which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded."[6]

Generally, where a trial court has weighed the evidence, appellate review is limited to determining whether substantial evidence supports the trial court's findings and, if so, whether the findings support the trial court's conclusions of law and judgment.[7] Substantial evidence is evidence that is "sufficient to persuade a rational, fair-minded person of the truth of the finding."[8]

---

[2] In re Detention of LaBelle, 107 Wn.2d 196, 204, 728 P.2d 138 (1986) (internal quotation marks omitted) (quoting In re Harris, 98 Wn.2d 276, 283, 654 P.2d 109 (1982)).

[3] Id. at 204.

[4] Id.

[5] Id. at 205.

[6] Id. at 204-05.

[7] Id. at 209.

[8] In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

For a 90-day involuntary commitment, the State must prove that the individual is "gravely disabled" by clear, cogent and convincing evidence.[9] This standard of proof means that the ultimate fact in issue must be shown by evidence to be "highly probable."[10]

Here, there is substantial evidence to support the findings that the trial court could reasonably have found to be clear, cogent and convincing. Moreover, these findings support the conclusion that A.T. was "gravely disabled."

A.T. challenges Finding 3 of the Supplemental Findings. Finding 3 identified A.T.'s passive behavior by failures in personal care, specifically in personal hygiene and mental health care, and also indicated the harm that could result.

> 3. [A.T.] is unable to care for his personal hygiene because, as a result of his mental disorder, he has repeatedly refused to bathe himself and change his clothing, despite his pants being saturated with urine and feces while in the hospital. [A.T.] is also reluctant to take his medications, and without adequate medication, [A.T.] will decompensate immediately, which could lead him to be out in the cold weather naked as he was prior to this hospitalization.[11]

Finding 4 stated that A.T. was in danger of serious physical harm resulting from these failures. It also provided the court's conclusion that A.T. was "gravely disabled."[12]

---

[9] LaBelle, 107 Wn.2d at 209.

[10] Id.

[11] Clerk's Papers at 39-40.

[12] This conclusion of law was erroneously labeled as a finding of fact. In re Detention of M.K., 168 Wn. App. 621, 623 n.3, 279 P.3d 897 (2012) (trial court's determination of "grave disability" is a conclusion, not a finding).

4. As a result of a mental disorder, there is a substantial risk that [A.T.] is in danger of serious physical harm resulting from a failure to provide for his essential human needs of health and safety. Therefore, the respondent is gravely disabled and requires further inpatient treatment in a more restrictive hospital setting to effectuate appropriate compensation.[13]

A.T. does not contest that he suffers from a mental disorder. He contests other points in the court's findings.

The finding that A.T. had poor personal hygiene is supported by substantial evidence. For example, A.T.'s chart notes from his stay at Harborview showed that A.T. repeatedly refused to change his clothing, despite the fact that his pants were soaked with urine. A.T. was "fearful of washing himself, afraid of getting hurt or getting germs." As a result, A.T. repeatedly refused to bathe or shower, despite evidence that he risked infection by not washing his body or hands after he used the bathroom.

The finding that A.T. was reluctant to take medications, and without adequate medication he will decompensate immediately, is also supported by substantial evidence. Both experts testified that A.T. was often non-compliant with medications and that he had to be monitored very closely. Further, Winther testified that A.T. "very quickly deteriorates in a very short period of time" and pointed out this was A.T.'s third hospitalization since December.

The dispositive issue is whether there is substantial evidence to support the finding that as a result of a mental disorder, A.T. is in danger of serious

---

[13] Clerk's Papers at 40.

5

physical harm resulting from a failure to provide for his essential human needs of health and safety. We conclude that there is.

The trial court made two references to potential physical harm to A.T. in Finding 3, but this evidence was improperly considered as substantive evidence by the court.

First, Finding 3 states that A.T.'s pants were "saturated in feces." The State concedes that this fact was not supported by the record. Second, Finding 3 states that A.T.'s decompensation "could lead to him out in the cold weather naked as he was prior to this hospitalization." The State also concedes that this hearsay evidence was improperly considered as substantive evidence. Consequently, we do not consider this evidence to support the finding of danger of serious physical harm.

But even disregarding these facts, there is substantial evidence to support this finding.

Dr. Romm testified that A.T.'s psychiatric diagnosis was schizophrenia, a mental impairment. She agreed with the conclusion that A.T. was "in danger of serious physical harm from a failure or inability to provide for his essential needs of health and safety, such as adequate nutrition, medical care, clothing, and bodily safety." Both experts recommended that A.T. remain in a hospital where he could be very closely monitored.

Moreover, as described above, the experts' testimony revealed that A.T. is unable and unwilling to care for his personal hygienic needs despite risk of

infection. A.T. is noncompliant with medication and medical advice, he quickly deteriorates when off his medication, and his behavior is erratic and impulsive.

In sum, there was substantial evidence to support the trial court's findings. Moreover, these findings of fact support the conclusion that A.T. was "gravely disabled" under RCW 71.05.020(17)(a).

A.T. argues that his "various idiosyncrasies" do not rise to the level of grave disability under the first definition, because his poor hygiene habits do not put him in danger of serious physical harm. However, as discussed above, A.T.'s habits, specifically his refusal to wash his hands and body, and his repeated refusal to change his urine-soaked clothing, do put him at risk of serious physical harm. They put A.T. at risk of infection. Further, RCW 71.05.020(17)(a) does not require that the risk of serious physical harm be imminent.[14] Thus, this argument is not persuasive.

We affirm the order of commitment.

Cox, J.

WE CONCUR:

---

[14] LaBelle, 107 Wn.2d at 202.