

2014 AUG -4 AM 9: 47

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Detention of )   No. 70605-5-I
)
)
)   UNPUBLISHED OPINION
KINTA HOLLINS )
)   FILED: August 4, 2014
_____)

VERELLEN, A.C.J. — Kinta Hollins seeks reversal of a 14-day involuntary treatment order. Hollins contends that the trial court abused its discretion by considering the testimony of a clinical psychologist about information contained in his medical records. He also challenges the sufficiency of the evidence supporting the court's findings that he suffered from a grave disability and that because of a mental disorder, he presented a likelihood of serious harm to others. Because the trial court did not violate the involuntary treatment act, chapter 71.05 RCW, in considering the expert witness's testimony and substantial evidence in the record supports the court's findings, we affirm.

## FACTS

On June 13, 2013, professional staff of Harborview Medical Center filed a 14-day involuntary treatment petition alleging that Hollins suffered from a mental disorder and that, as a result, he was gravely disabled and presented a substantial risk of physical harm to others.

At the hearing on the petition, Jesse Inman testified about an incident on May 31, 2013 at the Downtown Emergency Services Center (DESC), where he works. On that date, Inman was conducting an evening "mat check" to assess bed availability when Hollins approached him about some lost clothing. At that time, Inman was talking to another client to resolve a different problem. When Inman finished this conversation and turned around, he heard a "pop noise" from behind and turned around to see the client to whom he had just been talking lying on the floor with a bloody lip. Hollins was standing directly above the injured client in his boots and his underwear with a belt wrapped around his hand, saying loudly, "Where are my clothes?"[1] There was no one else standing nearby. Hollins looked intimidating and appeared to be agitated.

Joshua Welbaum, Hollins' mental health counselor at the DESC, testified that after working with Hollins on an outpatient basis for two months, they had been unable to make any progress whatsoever. He described Hollins as "very disorganized" and largely unable to communicate.[2] Welbaum stated that when Hollins is frustrated or upset, he has a "menacing bearing" that caused him to exercise caution when interacting with him.[3]

Joyce Shaffer, a clinical psychologist at Harborview, testified that she had evaluated Hollins twice just prior to the hearing. She based her assessment of his mental state on her personal evaluation, her review of Hollins' medical chart and staff

---

[1] Report of Proceedings (RP) (June 14, 2013) at 6.

[2] Id. at 16.

[3] Id. at 18.

reports, and conversations with Welbaum and Inman. Shaffer said that Hollins suffers from a mental disorder; namely, psychosis. She said that when she evaluated him both times, Hollins said very little to her and the responses that he did give were not even "slightly on target."[4] Shaffer said she asked Hollins about the assault that occurred at the shelter and he responded that "[t]here's a lot of instigating going on there."[5] When she asked Hollins how he would attend to his needs if he left the hospital, he said he would "continue paying [his] bills."[6]

Shaffer also testified about some of the notes from Hollins medical chart that she relied upon in forming her opinion, including statements Hollins made to hospital staff within a few days of the hearing and notes describing his behavior while hospitalized. For instance, Shaffer recounted that Hollins asked a staff person to read him a story while intently staring at the staff member's body and "suggestively slowly licking his lips in a circular motion" and also told staff he had "no idea" why he was there.[7] When the civil detainment process was explained to Hollins by staff, he said, "So this is all about my bank account?"[8] He also told staff that he needed to find his "payee" so he could obtain a "bazillion dollar check."[9]

Shaffer expressed the opinion that Hollins presented a substantial risk of danger to others because of his recent assault, his unpredictable behavior, and "total

---

[4] Id. at 27.
[5] Id.
[6] Id.
[7] Id. at 33.
[8] Id.
[9] Id. at 28.

disorganization by psychosis."[10]  Shaffer also cited Hollins' anger, hostility, and menacing demeanor, his apparent distraction by internal stimuli, his inability to make a contract with staff to ensure the safety of himself and others, and lack of recognition or understanding of his need for treatment.  Shaffer also concluded that Hollins was gravely disabled, stating her opinion that if released, Hollins would further deteriorate and would be unable to control aggressive impulses.  She also cited his impairment of judgment and impulse control, failure to recognize his need for treatment, and lack of any evidence he would be able to meet his needs if released.  Shaffer recommended continued inpatient treatment to stabilize Hollins on medication.

At the conclusion of the commitment hearing, the court determined that Hollins had a mental disorder and as a result, was gravely disabled and presented a substantial risk of harm to others.  The court also found that a less restrictive alternative to inpatient treatment was not available.  The court entered written findings of fact and conclusions of law and ordered Hollins to undergo involuntary treatment for a period not to exceed 14 days.  Hollins appeals.

### ANALYSIS

As a preliminary matter, although the 14-day commitment order at issue has long since expired, the State has not argued that this case is moot.  As Hollins points out, a reversal would restore his right to possess a firearm.  Also, the superior court's order may have adverse consequences on future involuntary treatment

---

[10] Id. at 35.

4

determinations.[11] Under these circumstances, we exercise our discretion to decide the appeal on the merits.

*Medical Records Testimony*

At one point during Shaffer's testimony, she read a note from the medical chart written the previous day stating that Hollins was "not improving" in various areas, including ability to communicate, manifestation of psychotic symptoms, aggression, and hostility.[12] Defense counsel objected to the testimony and explained:

> RCW 71.05.360 actually prohibits a witness from testifying about opinions as to a client's mental state unless the person observing the mental state, the person who has formed the opinion, is present in court to be cross-examined. And that's true even where the chart has satisfied the business records [exception].[13]

The court read the relevant portion of RCW 71.05.360(9), which provides that

> [t]he record maker shall not be required to testify in order to introduce medical or psychological records of the detained person so long as the requirements of RCW 5.45.020 are met except that portions of the record which contain opinions as to the detained person's mental state must be deleted from such records unless the person making such conclusions is available for cross-examination.

The defense argued that the court was required to delete portions of the medical records containing statements of opinions and could not consider such evidence for any purpose. But the court observed that the statute required only deleting portions of records when the records themselves were admitted into evidence and that neither party was seeking to admit the medical records. The court

---

[11] See In re Det. of M.K., 168 Wn. App. 621, 625-30, 279 P.3d 897 (2012).

[12] RP (June 14, 2013) at 29.

[13] Id.

determined that the statute did not prohibit the court from considering Shaffer's testimony to the extent that she testified about facts memorialized in the medical records, but ruled that it would not consider as substantive evidence any statements of opinion about Hollins' mental state derived from the records.

Hollins claims that the trial court impermissibly considered evidence of "psychiatric diagnoses" and "psychiatric reports" of witnesses who were not present in court and not subject to cross-examination, in violation of RCW 71.05.360(9).[14] As a result, he contends that the trial court's order of commitment must be reversed.

A fundamental problem with Hollins' argument is that he fails to identify any evidence of opinions about his mental state or psychiatric diagnoses that the trial court improperly considered. RCW 71.05.360(9) only outlines the procedure for admitting portions of medical or psychiatric records that constitute "opinions as to the detained person's mental state." Hollins refers to Shaffer's testimony about "various entries" in Hollins' medical chart.[15] He also mentions Shaffer's testimony that she learned from the initial detention paperwork that Hollins had a "'history of multiple assaults.'"[16] Hollins' history of assault does not appear to be included in the medical records, but in any event, such history is not evidence of an opinion about Hollins' mental state. Hollins fails to otherwise describe any inadmissible evidence.

Even if we considered the testimony that Hollins was "not improving" to be an opinion as to his mental state, RCW 71.05.360(9) requires deleting only certain

---

[14] Appellant's Br. at 11.

[15] Id. at 9.

[16] Id. (quoting RP (June 14, 2013) at 34).

portions of records if those records are admitted as evidence. As noted by the trial court, where Hollins' medical records were not admitted into evidence, there was nothing to delete or redact.[17] The statute does not prohibit expert testimony about information in the medical chart that is properly relied upon in forming an opinion.[18] Even if the testimony about Hollins' lack of improvement was inadmissible, Hollins does not argue that the expert was not entitled to consider it in forming her opinion. And the trial court expressly declined to consider any statement of opinion about Hollins' mental status as substantive evidence. Hollins argues that an expert may not rely upon ER 703 and 705 to simply recite otherwise inadmissible information contained in medical records. However, he provides no compelling authority supporting his argument when experts rely upon such records to form their opinions.[19] Hollins fails to establish that the trial court abused its discretion in considering any aspect of Shaffer's testimony.

*Sufficiency of the Evidence*

In general, an individual may be involuntarily committed for mental health treatment if, as a result of a mental disorder, the individual either (1) poses a

---

[17] Hollins' argument on appeal that the court could not consider Shaffer's testimony about the medical records because the State failed to establish as required by RCW 71.05.360 that they were business records is unavailing for the same reason.

[18] See ER 703 (expert may rely on inadmissible evidence as a basis for an opinion or inference if the facts or data utilized are the type reasonably relied on by experts in that particular field).

[19] Hollins cites In re Welfare of J.M., 130 Wn. App. 912, 924-25, 125 P.3d 245 (2005), which involved a caseworker and guardian ad litem reciting expert opinions they had not formed. This court condemned consideration of such third party opinions as substantive evidence. Here, Dr. Shaffer testified to her own expert opinions and merely provided details of the information she relied upon to form them.

7

substantial risk of harm to him or herself, others, or the property of others, or (2) is gravely disabled.[20] In this case, the commitment order was based upon a finding that Hollins both presented a substantial risk of harm to others and was gravely disabled. Hollins challenges the sufficiency of the evidence supporting these findings.

To order the involuntary commitment, the court had to find by a preponderance of the evidence that Hollins posed a substantial risk that physical harm will be inflicted upon another "as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm."[21] Or the court had to find by a preponderance of the evidence that Hollins was gravely disabled. "Gravely disabled" is

> a condition in which a person, as a result of a mental disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.[22]

To meet the standard of grave disability, there must be "recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded."[23] Where the trial court has weighed the evidence, our review is generally "limited to determining

---

[20] RCW 71.05.240(3); In re Det. of LaBelle, 107 Wn.2d 196, 201-02, 728 P.2d 138 (1986).

[21] RCW 71.05.020(25)(a)(ii), .240(3).

[22] RCW 71.05.020(17).

[23] LaBelle, 107 Wn.2d at 204-05.

whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment."[24]

Hollins claims that the court's finding that he presented a risk of harm to others is supported only by (1) evidence that hospital staff took safety precautions when interacting with him and (2) circumstantial evidence that he was involved in an assault.

He contends that this evidence is insufficient. While "circumstantial," the evidence in the record establishing that Hollins recently assaulted a person at the DESC was substantial. This evidence of assault alone was sufficient to support the trial court's determination by a preponderance of the evidence that Hollins posed a substantial risk of physical harm to others as evidenced by recent behavior.

Hollins also claims that the totality of the evidence does not establish that his mental illness rendered him incapable of meeting his essential needs in the community. He maintains that while the evidence might have indicated that treatment might be beneficial, it is not enough to show that he could benefit from treatment.[25] But Shaffer's testimony about Hollins' "total disorganization by psychosis," his complete lack of insight about his need for treatment, his impaired judgment, and lack of impulse control all support the trial court's determination of grave disability. According to the testimony, Hollins was largely unable to communicate due to his mental illness and was thus unable to convey any information about how he would care for himself were he released. The evidence did

---

[24] Id. at 209.

[25] See id. at 208.

not merely suggest that treatment would potentially help Hollins  Substantial evidence supports the court's determination by a preponderance of the evidence that due to his mental disorder, Hollins would be unable to provide for his own health and safety outside the hospital.

We affirm the involuntary treatment order.

WE CONCUR: