# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 55948-0-II |
| R.B., | |
| Appellant. | UNPUBLISHED OPINION |

CRUSER, J. — RB appeals an order imposing 180 days of involuntary mental health treatment based on a finding that he was gravely disabled, arguing that the evidence was not sufficient to establish grave disability.[1] We hold that the evidence was sufficient to support a finding that RB was gravely disabled. Accordingly, we affirm.

FACTS

Doctors Rolando Pasion and Angel Lugo Steidel petitioned for RB to receive involuntary treatment at Western State Hospital (WSH) for an additional 180 days. RB had already been admitted at WSH on five prior occasions.

The court held a hearing on the petition, at which Dr. Lugo Steidel and RB testified. Dr. Lugo Steidel is a clinical and forensic psychologist, and he met with RB on a weekly basis. He testified that, based on his evaluation, RB had schizophrenia and that the "current severity [ ] is

---

[1] We note that, even though the order at issue has expired, this case is not moot because it has been well established that the order has potential collateral consequences. *In re Det. of M.K.*, 168 Wn. App. 621, 629-30, 279 P.3d 897 (2012).

high." Sealed Verbatim Report of Proceedings (VRP) at 9. RB's symptoms included auditory hallucinations, which made it difficult for RB to follow a conversation because "he mumbles himself in a conversation with somebody." *Id.* at 10. Dr. Lugo Steidel also believed that RB experienced visual hallucinations.

Dr. Lugo Steidel described RB's "delusional thinking" related to the civil commitment proceedings. *Id.* RB thought that he has being held at WSH due to his prior arrest, despite that Dr. Lugo Steidel "explained to him repeatedly that that was the case in the original detainment but that he's [at WSH] under a civil commitment . . . order." *Id.* at 17-18. There had been a mistake in the previous petition, so RB believed that he was being held illegally. As a result, he thought that the court was going to give him a financial settlement after the hearing. RB's discharge plan relied on this financial settlement because he wanted to live in an RV (recreational vehicle) upon release, which he had done previously. The doctor expressed concern that, if RB was not in a supervised facility, "he will go actively seeking an RV even though he has no money for it and no interest in seeking psychiatric care." *Id.* at 16-17.

Regarding day-to-day living, Dr. Lugo Steidel stated that RB could generally take care of himself, though he needed reminders for personal hygiene. However, RB had "a history of noncompliance" with taking medication. *Id.* at 12. Dr. Lugo Steidel believed that RB would "not seek behavioral health care voluntarily." *Id.* at 15. The doctor explained,

> he has told me that [ ] he doesn't believe he has schizophrenia, that he does not think he needs medication but he takes it here, uh, and also most importantly, he's refusing to live in a place where there's supervised, clinical staff to help him. He says he does not need that and that all he needs is to live in an RV.

*Id.*

RB testified that, upon release, he planned to live in an RV outside of the Puget Sound area, although he did not currently own an RV. He also said that he would not take medication if he was released.

The court found RB to be gravely disabled as a result of a behavioral health disorder resulting in "severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over [his] actions" and that RB would not receive care essential for health and safety. Sealed Clerk's Papers at 14.

## DISCUSSION

RB argues that there was not sufficient evidence to support the trial court's conclusion that he is gravely disabled. We disagree.

A. LEGAL PRINCIPLES

*1. Gravely Disabled*

An individual is gravely disabled when the individual "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety" due to a behavioral health disorder. RCW 71.05.020(24)(b).[2] When the State seeks involuntary treatment under this prong, its evidence "must include recent proof of significant loss of cognitive or volitional control," and it must establish a factual basis to conclude that the individual "would not receive, if released, such care as is essential for his or her health or safety." *In re Det. of LaBelle*, 107 Wn.2d 196, 208, 728 P.2d 138 (1986). It is not enough to simply show that an

---

[2] A new version of RCW 71.05.020 has taken effect since the petition for involuntary treatment was filed in this case. *See* LAWS OF 2021, ch. 264, § 20. Because the amendment does not impact our analysis, we cite to the current version of the statute.

individual has a mental illness or that care and treatment is in the person's best interests. *Id.* at 208.

Rather, "such care must be shown to be *essential* to an individual's health or safety and the

evidence should indicate the harmful consequences likely to follow if involuntary treatment is not

ordered." *Id.*

### 2. Sufficient Evidence

When seeking a 180-day involuntary commitment, the State must prove that a person is

gravely disabled by clear, cogent, and convincing evidence. RCW 71.05.310. This means that the

evidence must show the ultimate fact in issue to be "highly probable." *LaBelle*, 107 Wn.2d at 209.

We review a trial court's decision on voluntary commitment to determine whether substantial

evidence supports the findings and whether the findings support the trial court's conclusion of law

and judgment. *Id.* Therefore, "[t]he clear, cogent, and convincing evidence standard is met when

'the findings [are] supported by substantial evidence in light of the "highly probable" test.' " *In re

Det. of A.M.*, 17 Wn. App. 2d 321, 330, 487 P.3d 531 (2021) (alteration in original) (quoting

*LaBelle*, 107 Wn.2d at 209). When evaluating whether the evidence was sufficient, we view the

evidence in the light most favorable to the petitioner. *Id.*

### B. ANALYSIS

The record shows sufficient evidence that RB suffers from a severe deterioration in routine

functioning evidenced by repeated and escalating loss of cognitive or volitional control. Dr. Lugo

Steidel testified that RB had schizophrenia and that the "current severity [ ] is high," but that RB

did not believe he had schizophrenia. VRP at 9. RB's auditory hallucinations were observable and

caused RB difficulties with following a conversation because he also engaged in conversation with

the voices he heard. In addition, RB's release plan included purchasing an RV with a financial

settlement from the court because he believed that he was being held illegally. This evidence is sufficient to show that RB had significant loss of cognitive or volitional control.

There was also sufficient evidence that, if released, RB would not receive essential care for his health or safety. Although RB could generally keep up with his activities of daily living, he had "a history of noncompliance" with medication. *Id.* at 12. RB did not believe that he had schizophrenia and did not plan to take medication upon release.[3] He also refused to live in a supervised, clinical setting upon release and only wanted to live in an RV, despite that he did not own one and could not purchase one. Based on this evidence, it was highly probable that RB would not have essential care for his health or safety because he had "no interest in psychiatric care" and did not have a place to live after being released from WSH.

Therefore, there was sufficient evidence to conclude that RB was gravely disabled under RCW 71.05.020(24)(b).

---

[3] RB argues that Dr. Lugo-Steidel testified that the medication RB took was "ineffective" and that "the State made no showing of any harmful consequences that could result" if he no longer took the medication. Br. of Appellant at 14. Dr. Lugo Steidel simply testified that RB was taking medication and that he experienced auditory, and likely visual, hallucinations. Viewing the evidence in the light most favorable to the petitioner, these hallucinations were the very reason that the hospital was giving RB medication; that does not mean that the medication is ineffective.

No. 55948-0-II

CONCLUSION

The evidence was sufficient to support the trial court's conclusion that RB was gravely disabled. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, P.J.

PRICE, J.