# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 55447-0-II |
| | (Consolidated with: |
| J.M. | No. 55454-2-II and |
| | No. 55504-2-II) |
| Appellant. | UNPUBLISHED OPINION |

LEE, C.J. — J.M. appeals the superior court's commitment order for 180 days of involuntary inpatient treatment, arguing that the superior court erred by finding that he was gravely disabled.[1]  We affirm.

## FACTS

On November 25, 2020, the State filed a petition for 180 days of involuntary treatment for J.M.  The petition alleged that J.M. was gravely disabled.  At the time of the petition, J.M. was detained at RI International Evaluation and Treatment under a prior 90 day commitment order.

---

[1]  In this consolidated case, J.M. has appealed three orders: the September 25, 2020 Findings of Fact, Conclusions of Law, and Order Authorizing Involuntary Treatment with Antipsychotic Medication (attached to Notice of Appeal, No. 55447-0-II (Dec. 14, 2020)); December 2, 2020 Findings of Fact, Conclusions of Law and Order Detaining Respondent (attached to Notice of Appeal, No. 55454-2-II (Dec. 14, 2020)); and December 22, 2020 Findings of Fact, Conclusions of Law, and Order Authorizing Involuntary Treatment with Antipsychotic Medication (attached to Notice of Appeal, No. 55504-2-II (Jan. 11, 2021)).  Although J.M. appealed three orders and those appeals were consolidated prior to the briefing, J.M.'s brief addresses only the trial court's December 2, 2020 order.  Letter from Court Clerk to Counsel re Consolidation, No. 55447-0-II (Jan. 19, 2021); Letter from Court Clerk to Counsel, No. 55504-2-II (Feb. 9, 2021).  Accordingly, we do not address the other appealed orders.

William Hansen, a mental health professional and court liaison for RI International, testified at the hearing on the petition. Hansen testified that J.M. was diagnosed with unspecified schizophrenia. Hansen explained that at the beginning of the 90 day commitment, Hansen decompensated because he was refusing medication. However, J.M.'s condition began improving when the superior court ordered involuntary medication.

Hansen also testified that J.M. had appropriate appearance and hygiene. However, J.M. had a constricted affect and was very anxious. J.M. continued to have hallucinations and paranoia; however, his preoccupation with religiosity had improved. Hansen explained that J.M.'s "cognitive control is impaired with the hallucinations, the paranoia, and the religious preoccupations." 4 Verbatim Report of Proceedings (VRP) at 70. And J.M.'s insight and judgment was impaired. Hansen explained that J.M. continued to deny he had a mental health disorder or required medication.

Hansen believed that J.M.'s mental health disorder placed him in danger of harm because J.M. had nowhere to go if released and J.M. would refuse his medication. It was extremely likely that, if released, J.M. would be homeless because he could not secure an adult family home placement.

> [STATE]: And what harmful consequences do you foresee if he does not receive treatment for his mental disorder in an inpatient setting?
>
> [HANSEN]: I believe he will be back—this is his fourth stay with us. I believe he will be back where he was when he first came to us, where he was—when he first came to us, he was very delusional and was responding to internal stimuli. It had been very, very difficult to get him up to the point where he is now. And I think if he left, he would—without taking medications, he would be right back where he was.

4 VRP at 71.

No. 55447-0-II; Consol. w/No. 55454-2-II; 55504-2-II

On December 2, 2020, the superior court entered an order for 180 days of involuntary commitment. The superior court found that J.M.'s symptoms were only controlled by medication that he refused to take voluntarily. And the superior court found that J.M. "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." Clerk's Papers at 168. Therefore, the superior court found that J.M. was gravely disabled.

The superior court ordered J.M. committed for 180 days of involuntary treatment.

J.M. appeals.

ANALYSIS

J.M. argues that the superior court erred by finding that he was gravely disabled under the second prong of the gravely disabled definition.[2] We disagree.

The State bears the burden of establishing a person is gravely disabled by clear, cogent, and convincing evidence. *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). Clear, cogent, and convincing evidence means that the ultimate fact at issue is shown to be "highly probable." *Id.*

---

[2] The State contends that this appeal is moot because no effective relief can be provided. The State argues that 180-day commitment orders are not the type that can be considered in future commitment proceedings and since J.M. has been committed multiple times, one more commitment order is not likely to influence future proceedings in any meaningful way. The State's arguments ignore the fact that the impact of prior commitments extends beyond court proceedings and that evaluators must undertake a broad consideration of *all* prior commitments under RCW 71.05.212(1). *In re Det. of M.K.*, 168 Wn. App. 621, 629-30, 279 P.3d 897 (2012). It is well-established that an appeal of an involuntary commitment order is not moot. *Id.* Therefore, we reject the State's contention.

On appeal, "we will not disturb the trial court's findings of 'grave disability' if supported by substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing." *Id*. We then determine whether the superior court's finding support its conclusions. *See id*.

The superior court may order an additional commitment period of 180 days when a person continues to be gravely disabled. RCW 71.05.320(4)(d), (6)(a).[3] "'Gravely disabled' means a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." RCW 71.05.020(24).[4] The superior court here found J.M. gravely disabled under the second prong, RCW 71.05.020(24)(b).

Under RCW 71.05.020(24)(b), a person is gravely disabled if his or her behavioral health disorder "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." This standard requires "proof of significant loss of cognitive or volitional control" and "a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety."

---

[3] RCW 71.05.320 was amended in 2021. However, there were no substantive changes made affecting this opinion, therefore we cite to the current statute.

[4] RCW 71.05.020 was amended in 2021. However, there were no substantive changes made affecting this opinion, therefore we cite to the current statute.

*LaBelle*, 107 Wn.2d at 208. This definition of gravely disabled is meant to address and prevent "'revolving door' syndrome, in which patients often move from the hospital to dilapidated hotels or residences or even alleys, parks, vacant lots, and abandoned buildings, relapse, and are then rehospitalized, only to begin the cycle over again." *Id.* at 206.

Here, Hansen testified that J.M. continued to suffer from a loss of cognitive control because of his hallucinations, paranoia, and religious preoccupation, and J.M. continued to deny he had a mental health disorder or required medication. Further, Hansen testified that J.M.'s improvement was based on the medication that he was taking under court order. And Hansen's testimony showed that J.M.'s mental health disorder placed him in danger of harm because he had nowhere to go if released because J.M. could no longer secure an adult family home placement and J.M. refused to take his medication, leading Hansen to believe that if J.M. were to be released, he would again be back in an inpatient treatment setting for a fifth time. Thus, the superior court properly found that J.M.'s symptoms were only controlled by medication he refused to take, that J.M. does not recognize his need for medication and will not voluntarily take medication if released, and that J.M. would not receive essential care if he was released. Substantial evidence in the record supports the superior court's finding that J.M. was gravely disabled. Accordingly, we affirm.

No. 55447-0-II; Consol. w/No. 55454-2-II; 55504-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Glasgow, J.

_____
Veljacic, J.

6