

**FILED
MARCH 12, 2024**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of: | ) | No. 39352-6-III |
| | ) | |
| G.F.V. | ) | UNPUBLISHED OPINION |
| | ) | |

PENNELL, J. — G.V. appeals from a 90-day involuntary treatment order. We affirm.

BACKGROUND

G.V. has a long history of mental illness. His diagnoses include unspecified schizophrenia spectrum disorder and methamphetamine use disorder. G.V.'s symptoms include responding to internal stimuli, anger, threatening conduct, and verbal outbursts. G.V. lacks insight into his conditions and denies the existence of any mental health impairments.

G.V. has had several prior mental health interventions and has consistently exhibited acute psychosis. Historically, G.V.'s symptoms improve when he is sober and taking prescribed medications. But G.V. has persistently shown resistance to sobriety and medication compliance when living out in the community.

In 2022, G.V. was incarcerated for several criminal charges. While at the county jail, he exhibited signs of psychosis and was referred for a competency evaluation. G.V. was found not competent. His criminal charges were dismissed and he was referred to Eastern State Hospital (ESH) for involuntary treatment.

At the time of his admission to ESH, G.V. was acutely psychotic and placed in seclusion. He appeared to respond to visual and auditory hallucinations, and he presented with disorganized thought processes and speech. G.V. made threats and used racial slurs, spit around his room, and flailed his arms while walking through hallways. In addition to his mental health symptoms, G.V. also showed signs of physical illness, apparently as a result of lack of hygiene.

G.V.'s symptoms improved as he took the prescribed medications. However, he eventually stopped taking the medications, claiming they were unnecessary because he does "not believe he has a mental illness." Rep. of Proc. (RP) (Oct. 20, 2022) at 9. G.V.'s symptoms returned after he stopped taking the medications. For example, the day before his commitment hearing, G.V. taunted hospital staff with racial slurs and "threaten[ed] to cut somebody's throat, [and] threaten[ed] to rape." *Id.* at 15.

When asked where he would live upon discharge from ESH, G.V. told hospital staff he would likely smoke a joint, go to a bar, and then stay at a hotel or a homeless

2

shelter. *See id.* at 12. G.V. asserted he would not take any prescribed medications upon release from the hospital.

G.V.'s treating psychiatrist and assigned social worker testified at his commitment hearing. Both expressed concerns about G.V.'s mental health and his inability to care for his daily needs. The treating psychiatrist explained that G.V.'s mental health disorder impairs his ability to engage in "[]realistic planning." *Id.* at 13. According to the psychiatrist, G.V. lacks the ability to plan for more than the most immediate short-term needs. *See id.* at 14-15. G.V.'s social worker testified that G.V. would not be safe if he were simply released to the streets. According to the social worker, G.V. needed a concrete discharge plan that addressed housing, transportation, and access to social services. Without this type of plan, G.V. would likely cycle back into custody.

G.V. testified on his own behalf. He denied having a mental health disorder and said he would not take prescribed medications if discharged. He described the treating psychiatrist's testimony as "all bullshit." *Id.* at 47. G.V. testified he had been unhoused since he was "15 or 12 [years old]" and that he "enjoy[s] running around on the streets most of the time" with "[n]owhere in particular that I like to lay my head for a long period of time." *Id.* at 37, 43. He testified that, if discharged, other than staying at a hotel or homeless shelter, he did not have much of a plan and would instead "take it as a day

3

to day basis and live my life the way I always do." *Id.* at 34. G.V. explained he would not

have a problem finding food because this had never been a problem for him in the past.

At the end of G.V.'s commitment hearing, the superior court found G.V. to be

gravely disabled under both RCW 71.05.020(25)(a) and (b). G.V. timely appeals.

ANALYSIS

G.V. challenges his 90-day commitment, arguing the State presented insufficient

evidence that he was "gravely disabled" under either of the alternative prongs set forth by

RCW 71.05.020(25).[1] We affirm the order of commitment under RCW

71.05.020(25)(b).[2]

Under the involuntary treatment act (ITA), chapter 71.05 RCW, a person may be

involuntarily committed if they are "gravely disabled." RCW 71.05.280(4); *see also*

RCW 71.05.320(1)(a). The ITA sets forth two alternative tests for a person to be found

gravely disabled. The ITA states in pertinent part:

> "Gravely disabled" means a condition in which a person, as a result of a
> behavioral health disorder: (a) Is in danger of serious physical harm
> resulting from a failure to provide for his or her essential human needs of

---

[1] At the time of G.V.'s 90-day commitment order, this definition was found under former RCW 71.05.020(24) (2022). This opinion cites the current statute because it has simply been renumbered. The definition itself remains unchanged.

[2] Although G.V.'s term of commitment has expired, collateral consequences accompanying an order of commitment mean this appeal is not moot. *See In re Det. of M.K.*, 168 Wn. App. 621, 625, 279 P.3d 897 (2012).

> health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety[.]

RCW 71.05.020(25).

The State has the burden of proving grave disability by "clear, cogent, and convincing evidence." *In re Det. of LaBelle*, 107 Wn.2d 196, 208-09, 728 P.2d 138 (1986). We will not disturb the trial court's commitment order if it was supported by substantial evidence that could reasonably satisfy the State's burden of proof. *In re Det. of L.N.*, 20 Wn. App. 2d 751, 754, 506 P.3d 720 (2022). When there are two alternate grounds for commitment, sufficient evidence supports the trial court's order so long as one of the grounds was supported by clear, cogent, and convincing evidence. *See id.* at 753 n.1.

We focus our review of G.V.'s case on the test for grave disability set by RCW 71.05.020(25)(b). This provision contains two components. The state must show that, as a result of a behavioral health disorder, (1) G.V. "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control," and (2) he "is not receiving such care as is essential for his . . . health or safety." RCW 71.05.020(25)(b). The fact that G.V. may have stabilized during his period of detention does not mean the State cannot prove grave disability under

RCW 71.05.020(25)(b). *See LaBelle*, 107 Wn.2d at 207. Rather, the State may show

grave disability by demonstrating "significant loss of cognitive or volitional control"

and "a factual basis for concluding that [G.V.]" would be "unable" to receive "care

*essential* to [his] . . . health or safety" upon release due to "severe deterioration of mental

functioning." *Id*. at 208.

Substantial evidence supports the trial court's finding of grave disability under

RCW 71.05.020(25)(b).

The unrebutted evidence indicates G.V. suffers from a behavioral health disorder

that manifests itself in severe cognitive and functional impairments, including frequent

responses to internal stimuli, delusional thinking, and aggressive conduct. Although there

was evidence G.V.'s condition had improved while he was receiving medications at ESH,

this changed once he stopped taking the medications. As recently as they day before his

commitment hearing, G.V. was engaged in threatening conduct and exhibiting irrational

thinking.

There was also substantial evidence G.V. would not receive care essential

for his health and safety if released from the hospital. G.V.'s deterioration was such that

he lacked awareness of his mental health needs and the harmful effects of using drugs.

G.V. was not simply voicing a lifestyle choice when he asserted his release plan was to

patronize bars and stay at hotels. Instead, his thought processes reflected an inability to rationally understand the nature of his mental health condition and the importance receiving care. Without persistent mental health care, G.V. lacked a realistic chance of living safely in the community.

## CONCLUSION

The State produced substantial evidence of G.V.'s grave disability under RCW 71.05.020(25)(b). The order of commitment is therefore affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Cooney, J.