IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of:<br><br>M.C. | No. 85678-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — M.C. appeals a trial court order committing him to 90 days of involuntary treatment under two separate subsections of the Involuntary Treatment Act (ITA), ch. 71.05 RCW. M.C. argues that the State presented insufficient evidence to support its findings on one of those subsections. Because M.C. is no longer detained as a result of the challenged order and granting M.C.'s requested relief on appeal would not affect the validity of the civil commitment order, M.C.'s appeal is moot and we dismiss the appeal.

I.    BACKGROUND

In July 2023, a designated crisis responder filed a petition for M.C.'s initial detention under the ITA, after he was booked in jail on multiple occasions during

a two-week period and appeared to be "decompensating further" on each occasion. M.C. was detained and evaluated at Telecare North Sound Evaluation and Treatment Center (Telecare). On July 19, 2023, the superior court granted a petition filed by Telecare to detain M.C. for 14 days of involuntary treatment.

On July 28, 2023, Telecare filed a second petition, seeking an additional 90 days of involuntary treatment to continue to address M.C.'s medication and treatment needs. According to the declarations of Telecare's professional staff, M.C. had made "minimal progress" toward stabilization, continued to refuse medication, was too "disorganized" to engage in any discharge planning, and required further inpatient hospitalization. The court held a hearing on the petition and considered the testimony of a clinical social worker employed by Telecare. On August 2, 2023, the court again found there was sufficient evidence to detain M.C., and determined that he suffered from a mental disorder and met the criteria for grave disability under both subsections (a) and (b) of RCW 71.05.020(25). The court ordered 90 days of involuntary treatment.

M.C. appeals.[1]

## II. ANALYSIS

Once an individual has been committed for 14 days, the State may seek an additional 90-day period of involuntary commitment based on grave disability.

---

[1] M.C.'s notice of appeal refers to a 14-day detention, but the order designated for review is the August 2, 2023 90-day order and it is clear from the briefing that it is the 90-day order M.C. challenges.

RCW 71.05.280(4), RCW 71.05.320(1)(a). The statute provides two definitions of "gravely disabled," which is a condition:

> in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety

RCW 71.05.020(25)(a), (b).

M.C. recognizes that the court concluded that he was gravely disabled under both subsections of the statute, but expressly declines to challenge the trial court's finding that he met the criteria for grave disability under RCW 71.05.020(25)(b). M.C. asks this court to reverse the finding under RCW 71.05.020(25)(a) and to strike that finding from the commitment order.

Because M.C. does not challenge the commitment order in its entirety, the State argues that M.C.'s appeal is moot. We agree. "As a general rule, this court will not review a moot case." In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004). "An appeal is moot where it presents merely academic questions and where this court can no longer provide effective relief." In re Det. of M.K., 168 Wn. App. 621, 625, 279 P.3d 897 (2012). Here, as is often the case because periods of detention authorized by the ITA are relatively short, the detention which is the subject of the appeal has ended. See, e.g., In re Cross, 99 Wn.2d 373, 377, 662 P.2d 828 (1983). Therefore, we are unable to provide "the most basic relief originally sought"—release. Id.

Yet, many appeals of civil commitment orders are not moot because of potential adverse collateral consequences stemming from the determinations that authorize involuntary treatment. See, e.g., id., at 377; see also M.K., 168 Wn. App. at 626; In re Involuntary Treatment of L.T.S., 197 Wn. App. 230, 234, 389 P.3d 660 (2016). When making a civil commitment determination, courts may consider prior involuntary treatment. RCW 71.05.245. Thus, "each commitment order has a collateral consequence in subsequent petitions and hearings." M.K., 168 Wn. App. at 626. So, despite release of the previously-detained individual, we are able to "render relief if we hold that the detention under a civil commitment order was not warranted." Id.

But in this case, because M.C. challenges only one of the two legal bases supporting the involuntary treatment order, a decision in M.C.'s favor would only result in that finding being stricken from the order, even if we were to agree that the evidence does not support the determination of grave disability under RCW 71.05.020(25)(a). Such a decision would not invalidate the commitment order, since the unchallenged determination under RCW 71.05.020(25)(b) equally supports the detention. And M.C. fails to explain why a decision striking one basis for commitment will provide "future relief." M.C. cites no authority, and we are aware of none, supporting the position that, where a commitment order is founded on multiple grounds, reversal of one ground eliminates potential future consequences of the civil commitment.

### III.   CONCLUSION

Because the challenged detention order has expired and reversal of one legal basis supporting the civil commitment order would not invalidate the order, M.C.'s appeal is dismissed as moot.

Díaz, J.

WE CONCUR:

Chung, J.

Dwyer, J.