# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| In re the Detention of | No. 47320-8-II |
| --- | --- |
| K.R., | |
| Appellant. | PUBLISHED OPINION |

LEE, J. — K.R.[1] was detained by a sheriff's deputy at a bank after allegedly making comments to a teller the previous day that referenced a relatively recent mass shooting in Colorado. The State filed a petition to detain K.R. and a 14-day involuntary treatment. After a probable cause hearing the following day, the superior court found that K.R. was gravely disabled and presented a likelihood of serious harm to others, granted the petition and entered a 14 day commitment order.

K.R. appeals, arguing that he was denied procedural due process because the mental health professional did not interview the complaining witnesses or examining physicians.[2] We hold that K.R.'s detention was improper because the Designated Mental Health Professional (DMHP) failed

---

[1] Under General Order 1992-3 of Division II, *In re the Matter of All Appeals of Persons Subject to Involuntary commitment proceedings, RCW 71.05*, (Wash. Ct. App.), available at: http://www.courts.wa.gov/appellate_trial_courts/, an appeal from an involuntary commitment proceeding will use the subject's initials instead of his or her name.

[2] K.R. also argues, and the State concedes, that this appeal is not moot. We accept the State's concession and agree the appeal is not moot. *In re Det. of M.K.*, 168 Wn. App. 621, 626, 279 P.3d 897 (2012) (holding that release from detention does not render an appeal moot where collateral consequences, such as the consideration of the commitment order at future commitment hearings, result from the detention).

to consult an examining emergency room physician as required by RCW 71.05.154. Therefore, we reverse the superior court's commitment order.[3]

## FACTS

### A. K.R.'S ACTIONS THE BANK

K.R. went to a bank in Vancouver on March 4, 2015, to verify that his VA benefits had been direct-deposited into his account as requested. K.R. spoke with a teller, Jason, who informed K.R. that the VA benefits had not been deposited in K.R.'s account. K.R. left and returned to the bank later that day with a completed direct-deposit form. Jason's shift had ended, so K.R. spoke with another teller, Dijari.

K.R. asked Dijari "about the bank errors and why certain things ha[d] happened with [his] accounts" recently and "what she thought about that." Verbatim Transcript of Proceedings (VTP) at 25. K.R. then said to Dijari, "I wonder if there is, like, people that go around messing with somebody and that is what may be cause [sic] the—the shooting in Colorado." VTP at 27. Dijari responded that she did not know the causes and the conversation stopped.

Dijari and K.R. decided that K.R. should come back the next day to complete the transaction with Jason. When K.R. arrived at the bank the next day, Dijari met him and told him

---

[3] K.R. also argued that (1) he was denied procedural due process because (a) he was not told his initial detainment was pursuant to RCW 71.05.153 and (b) no 14-day petition was filed; (2) the superior court abused its discretion in admitting testimony over his hearsay objection; and (3) the superior court's findings of fact did not support its conclusions that he was gravely disabled or that he presented a likelihood of serious harm to others. Because we reverse the commitment order, we do not address the remainder of the issues raised on appeal.

Jason was on the phone and would be with K.R. shortly. When K.R. sat down to wait, a sheriff's deputy entered the bank and detained K.R.

K.R. had a concealed pistol license and was carrying a handgun at the time. K.R. did not display or threaten anyone with his handgun.

B.   K.R.'S DETENTION

K.R. was transported by the sheriff's deputy first to a hospital in Vancouver, and then transferred to Recovery Innovations in Lakewood. There, Al Padilla, a DMHP, consulted with a nurse (RN) and a certified rehabilitation counselor (CRC), spoke with K.R., and reviewed K.R.'s chart. The record does not reflect that the DMHP consulted with a physician.

On March 9, the DMHP filed with the superior court a Petition for Initial Detention, a Statement of Rights, and Authorization and Notice of Detention. In the petition, the DMHP concluded that K.R. suffered from "a mental disorder characterized by impaired thought content, impaired cognitive functioning, impaired insight and impaired judgement." Clerk's Papers (CP) at 2.

C.   K.R.'S FOURTEEN DAY INVOLUNTARY TREATMENT PETITION AND ORDER

Also on March 9, the DMHP filed a Petition for Fourteen Day Involuntary Treatment. The probable cause hearing for the 14-day commitment was held on March 10.

The superior court found that K.R. "suffer[s] from a mental disorder," and "that you [K.R.] are a likelihood of serious harm to others." VTP at 39. The superior court concluded that "the Respondent shall be detained for involuntary treatment," "Respondent presents a likelihood of serious harm to others," and a less restrictive alternative was not in the best interests of K.R. or

others.  CP at 18 (some boldface omitted).  The superior court granted the petition and ordered a

fourteen day commitment.  K.R. appeals.

## ANALYSIS

K.R. argues that his detention was improper because the DMHP's investigation was not

sufficient to comply with the standards set forth in RCW 71.05.150(1) and RCW 71.05.154.  K.R.

acknowledges the DMHP's documentation of the observations of a RN and CRC, but assigns error

to the DMHP's failure to consult with an examining physician.  We hold that K.R.'s detention was

improper because the DMHP did not consult with an examining physician as required by RCW

71.05.154.

The State does not dispute that the DMHP failed to consult a physician or that RCW

71.05.154 requires a consultation with a physician.  But the State contends that the DMHP's

consultation with an RN and CRC instead of with a physician is a "technical irregularity which the

new language of [RCW 71.05.010] requires the court not to be focused upon."[4]  Br. of Resp't at

8.  We disagree.

RCW 71.05.154 states:

> A designated mental health professional conducting an evaluation of a
> person under RCW 71.05.150 or 71.05.153 *must consult with any examining*
> *emergency room physician* regarding the physician's observations and opinions
> relating to the person's condition, and whether, in the view of the physician,
> detention is appropriate.  The designated mental health professional shall take
> serious consideration of observations and opinions by examining emergency room
> physicians in determining whether detention under this chapter is appropriate. *The*
> *designated mental health professional must document the consultation with an*

---

[4] In its briefing, the State cites RCW 75.05.010.  Our review of the briefing and the statutes lead
us to presume the State meant to cite RCW 71.05.010.

*examining emergency room physician*, including the physician's observations or opinions regarding whether detention of the person is appropriate.

(Emphasis added). In relevant part, RCW 71.05.010 requires courts to focus on the merits of the petition, except where the requirements of the chapter have been totally disregarded. *In re Det. of C.W.*, 147 Wn.2d 259, 279, 53 P.3d 979 (2002); RCW 71.05.010(2). Here, the requirements of RCW 71.05.154 were totally disregarded.

RCW 71.05.154 explicitly requires the DMHP to consult with any examining emergency room physician on whether detention is appropriate. First, the statute requires that the DMHP "*must* consult with any examining emergency room *physician* regarding the *physician's* observations and opinions." RCW 71.05.154 (emphasis added). Here, there is no evidence in the record indicating that the DMHP consulted with any examining physician.

Second, the statute requires that the DMHP "*shall* take serious consideration of observations and opinions by examining emergency room *physicians* in determining whether detention . . . is appropriate." RCW 71.05.154 (emphasis added). Here, there is no evidence in the record indicating that the DMHP considered any observations or opinions of any examining physician.

Third, the statute requires that the DMHP "*must* document the consultation with an examining . . . *physician*, including the *physician's* observations or opinions regarding whether detention . . . is appropriate." RCW 71.05.154 (emphasis added). Here, the record is clear that the DMHP did not document any consultation with any examining physician.

Because of the DMHP's total disregard for the statutory requirements, we hold K.R.'s commitment was improper.[5] Therefore, we reverse the superior court's commitment order.

Lee, J.

We concur:

Worswick, P.J.

Melnick, J.

---

[5] At oral argument, the State argued that because RCW 71.05.153 allows a person to be taken to places other than a hospital, a DMHP is not actually required to consult with an examining physician. The State's argument ignores the explicit requirement in RCW 71.05.154 that a DMHP "*must* consult with any examining emergency room physician" and that the DMHP "*must* document the consultation with an examining emergency room physician, including the physician's observations or opinions regarding whether detention of the person is appropriate." RCW 71.05.154 (emphasis added).