

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 76267-2-I |
| | ) | |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| G.S.Y., | ) | |
| Appellant. | ) | FILED: June 18, 2018 |

VERELLEN, J. — G.S.Y. challenges the trial court's 14-day involuntary treatment order, contending the designated mental health professional (DMHP) did not fulfill the requirement of former RCW 71.05.154 (2013) that the DMHP "must consult with any examining emergency room physician regarding the physician's observations and opinions relating to the person's condition."

The DMHP consulted with the physician assistant assigned to G.S.Y. at the hospital. Both parties agree no emergency room physician examined G.S.Y. Because there was not any examining emergency room physician who examined G.S.Y., the plain language of the statute in effect at the time did not require that the DMHP interview a physician as a condition of seeking a 14-day commitment.

Therefore, we affirm.

FACTS

On December 23, 2016, King County DMHP Allison Ankney received a referral regarding G.S.Y. from the emergency room staff of Evergreen Hospital in Kirkland, Washington. When Ankney got to the emergency room, she spoke with the treating provider for G.S.Y., Emma Calvert, a physician assistant. Calvert personally observed G.S.Y. and told Ankney that G.S.Y. should be detained. Ankney documented her consultation with the physician assistant.

During Ankney's evaluation of G.S.Y. in the emergency room, she concluded that G.S.Y. was manifesting symptoms of a mental disorder and was exhibiting suicidal behavior. Ankney concluded that G.S.Y. posed an "imminent likelihood of serious harm to herself" and required involuntary psychiatric hospitalization.[1] Ankney made the decision to detain G.S.Y. for up to 72 hours for evaluation and treatment.[2] G.S.Y. was transferred to Fairfax Hospital.

On December 27, 2016, Fairfax Hospital filed a 14-day involuntary treatment petition. G.S.Y. filed a motion to dismiss the petition, arguing that Ankney failed to consult with an examining emergency room physician. The State and G.S.Y. both acknowledged that "there was no emergency room physician who examined [G.S.Y.]"[3] The court ultimately denied the motion to dismiss, ruling that former RCW 71.05.154 required the DMHP to consult with an emergency room

---

[1] Clerk's Papers (CP) at 2.

[2] Former RCW 71.05.153 (2015).

[3] Report of Proceedings (Dec. 29, 2016) at 24.

physician only if a mental health respondent was examined by a physician.

After conducting a probable cause hearing, the court determined that the hospital had met its burden of proof by a preponderance of the evidence and ordered G.S.Y. committed for up to 14 days of involuntary treatment.

G.S.Y. appeals.

## ANALYSIS

As a preliminary mater, it is undisputed that this issue is not moot and is properly before the panel on review.[4]

G.S.Y. argues this court should reverse the commitment order because Ankney violated former RCW 71.05.154 by failing to consult with an examining emergency room physician. The State contends G.S.Y. misapprehends the purpose of former RCW 71.05.154.

The meaning of a statute is a question of law that we review de novo.[5] "When construing the requirements of [RCW 71.05] the court must focus on the merits of the petition, except where requirements have been totally disregarded."[6]

Under former RCW 71.05.153(1) (2015), a "designated mental health professional" may initially detain an individual if they receive "information alleging

---

[4] See In re Det. of M.K., 168 Wn. App. 621, 629, 279 P.3d 897 (2012) ("Because an involuntary commitment order may have adverse consequences on future involuntary commitment determinations," appeals after the expiration of the commitment period are not moot.).

[5] State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

[6] Former RCW 71.05.010(2) (2015) (citing In re Det. of C.W., 147 Wn.2d 259, 281, 53 P.3d 979 (2002)).

that a person, as a result of a mental disorder, presents an imminent likelihood of serious harm, or is in imminent danger because of being gravely disabled."

Former RCW 71.05.154 provided:

> A [DMHP] conducting an evaluation of a person under RCW 71.05.150 or 71.05.153 *must consult with any examining emergency room physician regarding the physician's observations and opinions relating to the person's condition*, and whether, in the view of the physician, detention is appropriate. The [DMHP] shall take serious consideration of observations and opinions by examining emergency room physicians in determining whether detention under this chapter is appropriate. *The [DMHP] must document the consultation with an examining emergency room physician, including the physician's observations or opinions regarding whether detention of the person is appropriate.*[7]

Here, it is undisputed there was no examining emergency room physician. When the DHMP got to the emergency room, she spoke with the treating provider for G.S.Y., a physician assistant.[8] She noted in her declaration that

> [the physician assistant] was the emergency room treating provider assigned to the respondent, *rather than a doctor*. It is common practice for many emergency rooms to assign some of their patients to PAs, rather than doctors. Our current practice is to ask the

_____

[7] Former RCW 71.05.154 was amended effective April 1, 2018, removing the language "must consult with any examining emergency room physician regarding the physician's observations and opinions relating to the person's condition, and whether, in the view of the physician, detention is appropriate" at issue in this appeal. The current statute requires the designated crisis responder to take serious consideration of "observations and opinions by an examining emergency room physician, advanced registered nurse practitioner, or physician assistant." See SESSION LAWS, 56th Leg., 3rd Spec. Sess. ch. 14, sec. 11 (Wash. 2017).

[8] CP at 41 ("Per our typical practice, upon my arrival in the emergency room I went to the social work office and *requested the name of the emergency room treating provider for the respondent and I asked for the social worker to introduce me to the emergency room treating provider.*") (emphasis added).

4

emergency room treating provider who has personally observed the respondent for their opinion, and that is what I did in this case.[9]

G.S.Y.'s contention that former RCW 71.05.154 requires an examination by an emergency room physician is not compelling in view of the legislature's express reference in the statute to "*any* examining emergency room physician." Because there was not "any emergency room physician" who had any "observations or opinions" about G.S.Y., the plain language of the statute in effect at the time did not impose a requirement that an emergency room physician *must* conduct an examination of G.S.Y. in order to allow for a 14-day commitment.

G.S.Y. relies on In re Detention of K.R. to support her statutory interpretation.[10] In K.R., Division Two of this court held "K.R.'s detention was improper because the DMHP did not consult with an examining physician as required by RCW 71.05.154."[11] But in K.R., the court focused on the lack of *any* "evidence in the record indicating that the DMHP consulted with any examining physician."[12] K.R. was first admitted to a hospital and then transferred to Recovery Innovations.[13] At Recovery Innovations, the DHMP consulted with a registered nurse and a certified

---

[9] CP at 41 (emphasis added).
[10] 195 Wn. App. 843, 381 P.3d 158 (2016).
[11] Id. at 846.
[12] Id. at 847.
[13] Id. at 845.

5

rehabilitation counselor.[14] Although Recovery Innovations is not an emergency room setting, K.R. was previously at a hospital where there may have been an emergency room physician.[15] G.S.Y.'s reliance on K.R. is not persuasive given the factual distinctions and the legislature's reference to "*any* examining emergency room physician."[16]

Therefore, we affirm.

WE CONCUR:

---

[14] Id. at 845-46.

[15] The appellant's opening brief in K.R. recites, "There is no explanation for why there was no consultation with a physician." Appellant's Br. at 20. Here, the clear explanation is that a physician assistant rather than a physician examined G.S.Y., and the DHMP consulted with the physician assistant.

[16] Former RCW 71.05.154.