COURT OF APPEALS DIV I
2018 NOV 26 AM 8: 37

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | DIVISION ONE |
| | ) | |
| C.A.C., | ) | No. 77173-6-I |
| | ) | |
| Appellant. | ) | PUBLISHED OPINION |
| | ) | |
| | ) | FILED: November 26, 2018 |

DWYER, J. — C.A.C. appeals from a 14-day involuntary treatment commitment order. C.A.C. contends that the designated mental health professional who recommended his initial detention did not fulfill the requirement of a statute that required a designated mental health professional to "consult with any examining emergency room physician regarding the physician's observations and opinions relating to the person's condition."[1] We disagree and affirm.

I

On June 20, 2017, Jennifer Palmer, a designated mental health professional (DMHP), received a referral regarding C.A.C. while C.A.C. was staying in his father's home. When Palmer arrived, she found that C.A.C. had barricaded himself in the home and refused to leave, leading Palmer to request police assistance. After police arrived, Palmer evaluated C.A.C. in the home without a physician present. Palmer directed that C.A.C. be placed in emergency

---

[1] Former RCW 71.05.154 (2013).

custody for no more than 72 hours pursuant to former RCW 71.05.153 (2015). C.A.C. was taken to Fairfax Hospital.

Within the 72 hour-period, Sonja Kottke, a psychiatric advanced registered nurse practitioner at Fairfax Hospital, filed a petition in superior court, requesting a 14-day commitment for involuntary treatment. C.A.C. moved to dismiss the petition on the ground that the DMHP had violated former RCW 71.05.154 (2013)[2] by not consulting with an emergency room physician before recommending detention. The trial court heard arguments on this motion and denied it, reasoning that former RCW 71.05.154 did not "create[] an affirmative obligation [for a DMHP] to seek out an emergency room physician where the . . . investigation . . . is happening in the field."

After denying C.A.C.'s motion, the trial court held a probable cause hearing as to the 14-day involuntary treatment petition pursuant to RCW 71.05.240. The trial court ordered the commitment. C.A.C. appeals from that order.

II

C.A.C. avers that Palmer violated former RCW 71.05.154 by not consulting with an emergency room physician before making the decision to detain him. He contends that this failure amounted to a total disregard of the

---

[2] Former RCW 71.05.154 was amended effective April 1, 2018, removing the language "must consult with any examining emergency room physician regarding the physician's observations and opinions relating to the person's condition, and whether, in the view of the physician, detention is appropriate" at issue herein. The current statute requires the designated crisis responder to take serious consideration of "observations and opinions by an examining emergency room physician, advanced registered nurse practitioner, or physician assistant." RCW 71.05.154 (2018).

requirements of the involuntary treatment act (ITA)[3] and, thus, that his detention was unlawful. We disagree.[4]

The meaning of the statute is a question of law that we review de novo.[5] State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). The statutory language at issue herein is part of the statutory scheme of the ITA.

> When construing the requirements of this chapter the court must focus on the merits of the petition, except where requirements have been totally disregarded, as provided in In re C.W., 147 Wn.2d 259, 281 (2002). A presumption in favor of deciding petitions on their merits furthers both public and private interests because the mental and physical well-being of individuals as well as public safety may be implicated by the decision to release an individual and discontinue his or her treatment.

Former RCW 71.05.010(2) (2015).[6]

Pursuant to former RCW 71.05.153(1) (2015),[7] a "designated mental health professional" who received "information alleging that a person, as the result of a mental disorder, presents an imminent likelihood of serious harm, or is in imminent danger because of being gravely disabled . . . may take such person, or cause by oral or written order such person to be taken into emergency custody

---

[3] Ch. 71.05 RCW.

[4] The parties agree that this issue is not moot and is properly before us on review. See In re Det. of M.K., 168 Wn. App. 621, 626, 279 P.3d 897 (2012) ("[E]ach commitment order has a collateral consequence in subsequent petitions and hearings, allowing us to render relief if we hold that the detention under a civil commitment order was not warranted.")

[5] In making our determination, we are not bound by prior decisions of other divisions of the Court of Appeals. In re Pers. Restraint of Arnold, 190 Wn.2d 136, 138, 410 P.3d 1133 (2018).

[6] RCW 71.05.010 was subsequently amended effective April 1, 2018, to extend its scope to persons with substance use disorders. No changes were made to the language of RCW 71.05.010(2). See RCW 71.05.010 (2018).

[7] RCW 71.05.153 was subsequently amended effective April 1, 2018. The changes to RCW 71.05.153(1) consist solely of replacing the term "designated mental health professional" with "designated crisis responder." See RCW 71.05.153(1) (2018).

in an evaluation and treatment facility for not more than seventy-two hours." In turn, former RCW 71.05.154 provided that:

> A [DMHP] conducting an evaluation of a person under RCW 71.05.150 or 71.05.153 must consult with any examining emergency room physician regarding the physician's observations and opinions relating to the person's condition, and whether, in the view of the physician, detention is appropriate. The [DMHP] shall take serious consideration of observations and opinions by examining emergency room physicians in determining whether detention under this chapter is appropriate. The [DMHP] must document the consultation with an examining emergency room physician, including the physician's observations or opinions regarding whether detention of the person is appropriate.

Division Two has held that former RCW 71.05.154 required a DMHP to consult with an emergency room physician every time a decision to detain is made. See In re Detention of K.R., 195 Wn. App. 843, 846, 381 P.3d 158 (2016). The respondent in that case had been taken to a hospital[8] but had then been transferred to a rehabilitation center wherein the DMHP consulted with a registered nurse and a certified rehabilitation counselor. K.R., 195 Wn. App at 845-46. The DMHP subsequently petitioned for a 72-hour detention. K.R., 195 Wn. App at 846. In holding that K.R.'s detention was improper, Division Two rejected an interpretation of former RCW 71.05.154 that would not require DMHPs to consult with physicians where none were available.

> At oral argument, the State argued that because RCW 71.05.153 allows a person to be taken to places other than a hospital, a DMHP is not actually required to consult with an examining physician. The State's argument ignores the explicit requirement in RCW 71.05.154 that a DMHP "*must* consult with any examining emergency room physician" and that the DMHP "*must* document the consultation with an examining emergency room physician,

---

[8] The opinion states only that "K.R. was transported by the sheriff's deputy first to a hospital in Vancouver." K.R., 195 Wn. App. at 845. It does not indicate the nature or length of K.R.'s stay at the hospital or whether K.R. was treated in an emergency room.

including the physician's observations or opinions regarding whether detention of the person is appropriate." RCW 71.05.154 (emphasis added).

K.R., 195 Wn. App. at 848 n.5.

It is undisputed that, when C.A.C. was initially detained, there was no examining emergency room physician present or involved in his care. C.A.C. relies on K.R. and its strict interpretation of former RCW 71.05.154 to contend that his initial detention was improper. However, such an interpretation could render detentions made outside of hospital emergency room settings onerous or even impossible. Pursuant to the interpretation adopted by the K.R. court, a DMHP would be unable to make the decision to detain a person without first transporting that person to a hospital emergency room and waiting until a physician became available.

Confronted with this issue, the trial court herein interpreted former RCW 71.05.154 as follows:

> I have ruled before and would rule again today that it's really the word "any" in the first sentence of [RCW 71.05.154] that drives the court's analysis that this is not a statute that creates an affirmative obligation to seek out an emergency room physician where the interaction, investigation, and decision is happening in the field, rather it places an affirmative responsibility on the DMHP to seek out, consult with, and consider the input of an emergency room physician who, given the circumstances of a particular case, is engaged in the evaluation and care of the patient.

We agree with the trial court that the phrase "*any* examining emergency room physician" indicates that the legislature contemplated situations in which a detention would have to be commenced outside the presence of an examining physician. The term "any" indicates one of an existing set of physicians,

"indicat[ing] a positive but undetermined number or amount." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (2002). When there is no "positive . . . number or amount" of physicians available, it follows that there is not "any" one physician with whom to consult. Thus, given that no examining emergency room physician had observed the respondent, the physician consultation requirement of subsection .154 did not apply to the DMHP's determination. This interpretation is consistent with RCW 71.05.153(1), which both anticipated DMHPs making decisions to detain outside of a hospital setting and the transportation of respondents to places other than hospital emergency rooms. It is also consistent with the legislative intent of the ITA "[t]o provide prompt evaluation and timely and appropriate treatment of persons with serious mental disorders." Former RCW 71.05.010(1)(c) (2015).

Given that there was not "any examining emergency room physician" at C.A.C.'s father's house when the decision to detain was made, the DMHP herein acted lawfully in evaluating C.A.C. and directing his detention. The trial court did not err by denying C.A.C.'s motion to dismiss.[9]

---

[9] As this holding concerns an iteration of a statute that is no longer in effect, there is a possibility that the construction of former RCW 71.05.154 may not resurface as an issue in our courts. We operated on such an understanding when deciding In re Det. of G.S.Y., No. 76267-2-I, (Wash. Ct. App. June 18, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/762672.pdf, an opinion that declined to follow Division Two's holding in K.R. but that was not published. We now have yet another case. We recognize that trial courts in Division One are left without clear guidance as to how former RCW 71.05.154 is to be applied, due to the existence of an unpublished opinion from this division that is not in accord with another division's published opinion. Hence, this published opinion.

Affirmed.

_____

We concur:

_____          _____