**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clientslwareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of | No. 82524-1-I |
| C.I. | DIVISION ONE |
| | PUBLISHED OPINION |

CHUN, J. — Cascade Behavioral Health Hospital (Cascade) petitioned for a 14-day involuntary commitment of C.I. under the involuntary treatment act (ITA), ch. 71.05 RCW. The trial court denied C.I.'s motion to dismiss the petition based on lack of statutory compliance and ordered commitment. C.I. appeals, arguing that reversal is required because the individual who signed the petition did not testify at the commitment hearing. For the reasons below, we affirm.

## I. BACKGROUND

Police transported C.I. to the Swedish Edmonds emergency department for a mental health evaluation after he left his adult family home and began wandering in neighbors' yards. At the time of his admission, C.I. was "agitated, tangential, religiously preoccupied, and hypersexual." A Snohomish County designated crisis responder filed an emergency petition to detain C.I. for an initial 120-hour evaluation and treatment under RCW 71.05.153. Cascade later petitioned for 14-day involuntary treatment, alleging that C.I. presented a

Citations and pin cites are based on the Westlaw online version of the cited material.

likelihood of serious harm to others and that he was gravely disabled.[1] The petition was signed by Cascade staff member Patrick Swann and a second individual whose name and title are illegible.

On March 31, 2021, the superior court held a probable cause hearing on the 14-day commitment petition. C.I. was present at the outset of the hearing but waived his presence soon after. The State presented three witnesses. Sirgut Ashenaffi, the operator of the adult family home where C.I. resided, testified that C.I. behaved appropriately at first but deteriorated into erratic behaviors over time. The second witness, C.I.'s brother Justin Bedford, described similar changes in C.I.'s behaviors during the same period and stated that this has happened before.

The State's third and final witness was Dr. Robert Beatty, a licensed clinical psychologist who works for Cascade as a court evaluator. Beatty testified that C.I. has a behavioral health disorder with a working diagnosis of schizoaffective disorder and that the impairment has a substantial adverse effect on C.I.'s cognitive and volitional functioning. In evaluating C.I.'s mental health, Beatty reviewed C.I.'s medical records from Cascade, conferred with C.I.'s treatment team, and observed the testimony of Ashenaffi and Bedford as well as C.I.'s behavior in the courtroom. Beatty noted that C.I.'s behavioral health

---

[1] RCW 71.05.020(24) defines "gravely disabled" as "a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." A person is gravely disabled if either prong of the statute is met. In re Det. of LaBelle, 107 Wn.2d 196, 202, 728 P.2d 138 (1986).

No. 82524-1-I/3

disorder presented with symptoms of both mania (elevated and labile mood, hypersexuality, decreased sleep, and an elevation in goal-directed behavior) and psychosis (delusions, hyperverbal and tangential speech, and disinhibited behaviors). Beatty opined that, as a result of a mental disorder, C.I. posed a substantial risk of harm to others and that he was gravely disabled under RCW 71.05.020(24)(a) and (b).

During cross-examination of Beatty, the State acknowledged that Swann was the individual who filed the commitment petition. When C.I.'s attorney asked whether Swann is a testifying court evaluator, Beatty explained, "He's new. He has been working with us for eight days, so he has not yet testified in a hearing." C.I.'s attorney moved to dismiss the petition because RCW 71.05.230 requires that a petitioner be prepared to testify and that Swann, by Beatty's own admission, was not prepared to testify. The court denied the motion, stating that Beatty's testimony did not establish that Swann was unprepared to testify but rather that Beatty was testifying because Swann was new.

At the end of the hearing, the court ruled that C.I. had a behavioral health disorder and was gravely disabled under RCW 71.05.020(24)(b). The court ordered that C.I. be involuntarily committed for 14 days.

C.I. appeals.[2]

---

[2] C.I. states that the appeal is not moot even though the commitment period has expired. The State does not dispute C.I.'s argument. We agree with C.I. See In re Det. of M.K., 168 Wn. App. 621, 626, 279 P.3d 897 (2012) (when orders have adverse consequences in future commitment proceedings, an appeal is not moot).

No. 82524-1-I/4

II. <u>ANALYSIS</u>

C.I. contends that the trial court erred in denying his motion to dismiss because Swann, the individual who signed the 14-day commitment petition, was not present at the hearing or prepared to testify in favor of commitment. C.I. contends that this deficiency constituted a total disregard for the ITA, warranting reversal of the commitment order. <u>See</u> RCW 71.05.010(2) (courts must focus on the merits of a petition for involuntary commitment unless statutory requirements were "totally disregarded"). The State responds that Beatty's testimony satisfied all pertinent statutory requirements. We agree with the State.

Statutory construction presents a question of law reviewed de novo. <u>In re Det. of R.H.</u>, 178 Wn. App. 941, 948, 316 P.3d 535 (2014). When construing a statute, we give effect to the plain and ordinary meaning of the language used by the legislature. <u>In re Det. of T.A.H.-L.</u>, 123 Wn. App. 172, 183, 97 P.3d 767 (2004). Because the ITA affects liberty interests, it must be strictly construed. <u>In re Det. of D.W. v. Dep't of Soc. & Health Svcs.</u>, 181 Wn.2d 201, 207, 332 P.3d 423 (2014). But "we will not import requirements into the ITA when the plain language of the statute demonstrates no legislative intent to impose such requirements." <u>In re Det. of B.M.</u>, 17 Wn. App. 2d 914, 920, 492 P.3d 837 (2021).

RCW 71.05.230 describes the steps that must be followed in filing a 14-day commitment petition. Under RCW 71.05.230(1), a petition may be filed only if "[t]he professional staff of the facility providing evaluation services has analyzed the person's condition and finds that the condition is caused by a

4

behavioral health disorder and results in: (a) A likelihood of serious harm; (b) the person being gravely disabled; or (c) the person being in need of assisted outpatient behavioral health treatment; and are prepared to testify those conditions are met."  RCW 71.05.230(4)(a)(i) further requires that the petition be filed by "[t]he professional staff of the facility or the designated crisis responder" and must be signed by "[o]ne physician, physician assistant, or psychiatric advanced registered nurse practitioner" and "[o]ne physician, physician assistant, psychiatric advanced registered nurse practitioner, or mental health professional."

C.I. contends that Beatty's testimony established that Swann was not "prepared" to testify, as required by RCW 71.05.230.  We disagree.  Absent any specific statutory definition, words in a statute are given their plain ordinary meaning ascertained from a standard dictionary.  In re Marriage of Ruff and Worthley, 198 Wn. App. 419, 425, 393 P.3d 859 (2017).  "Prepare" means "to make ready beforehand for some purpose: put into condition for a particular use, application, or disposition."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1790 (1993).  When asked why Swann was not testifying, Beatty explained that Swann was new and had not yet testified at a hearing.  Beatty did not state that Swann was unqualified, incapable, or unprepared to do so.

We also reject C.I.'s argument that Beatty's testimony was an inadequate substitute for that of Swann.  RCW 71.05.230 states that "the professional staff of the facility providing evaluation services" must be prepared to testify.  It also specifies that the "professional staff" who sign the petition must fall into certain

5

categories. But nothing in the language of the statute suggests a requirement that the professional staff member who signed the petition must testify at the hearing. Such a limitation would create unnecessary delay while doing nothing to further the determination of whether a patient is currently needing treatment. See RCW 71.05.010(c) (legislative intent of ITA is to "provide prompt evaluation and timely appropriate treatment of persons with serious behavioral health disorders").

C.I. says that In re Detention of K.R., 195 Wn. App. 843, 381 P.3d 158 (2016) is instructive, but that case is readily distinguishable. In K.R., the designated mental health professional (DMHP) who sought K.R.'s detention failed to consult an examining physician, as required by RCW 71.05.154. 195 Wn. App. at 847-48. Division Two of this court agreed with K.R. that reversal was required because the DMHP exhibited "total disregard" for statutory requirements. 195 Wn. App. at 848. Here, in contrast, there was actual compliance with the applicable statute. RCW 71.05.230 does not require that the author of the petition be the person who testifies. Beatty, a professional staff member of the facility that evaluated C.I., properly testified at the hearing.

Thus, we affirm.

_Chun, J._

WE CONCUR:

_Coburn, J._        _Mann, C.J._

6