## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

IN RE THE DETENTION OF:

W.C.R.T.,

Appellant.

No. 82548-8-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, C.J. — W.T. appeals a trial court's order involuntarily committing him to Western State Hospital (WSH) for 180 days of mental health treatment. W.T. claims the State presented insufficient evidence that he was gravely disabled as a result of a mental disorder, and that his counsel was ineffective for proposing an allegedly defective pattern instruction on the burden of proof. We affirm.

## FACTS

W.T. is a 65-year-old man with a longstanding history of schizoaffective disorder and problematic sexual behaviors stemming from erotomanic delusions. He has been hospitalized on many occasions and has exhibited symptoms including pressured speech, disorganized thinking, auditory hallucinations, sexual preoccupation, depression, and mood fluctuations. W.T.'s stalking behaviors have resulted in repeated violations of protection orders against him.

W.T. was charged with felony stalking in January 2016. In January 2017 the superior court found that W.T. was incompetent, dismissed the criminal charge without

Citations and pin cites are based on the Westlaw online version of the cited material.

prejudice, and ordered that he be sent to WSH for evaluation under chapter 71.05 RCW.

In February 2017, WSH staff members filed a petition seeking W.T.'s involuntary mental health treatment for up to 180 days on the basis that he was gravely disabled as a result of a mental disorder. W.T. stipulated to a 90-day involuntary commitment order. In May 2017, the superior court committed W.T. for 180 days of involuntary treatment on the basis that he continued to be gravely disabled. Subsequent petitions from WSH staff resulted in court orders recommitting W.T. to additional consecutive 180-day periods of inpatient treatment in October 2017, April 2018, October 2018, and May 2019.

On October 28, 2019, W.T.'s treating psychologist, Dr. Laetitia Geoffrey-Dallery, and treating psychiatrist Dr. Kamran Naficy again sought to recommit W.T. to a 180-day period of involuntary treatment on the basis of grave disability. The petition was supported by a declaration from the petitioners detailing W.T.'s history, mental illness diagnosis, and current condition. Regarding W.T.'s current mental health symptoms, the declaration stated that W.T. continues to present with manic and disruptive behaviors, disorganized thoughts, tangential speech, and loud and angry outbursts. The declaration also noted that W.T. appeared to be resuming his stalking behaviors. In response to the petition, W.T. requested a jury trial.

The trial took place in December 2019. At trial, Dr. Geoffrey-Dallery opined that W.T. was gravely disabled. She testified that she had diagnosed W.T. with schizoaffective disorder, bipolar type. She stated that W.T. exhibits persistent erotomanic delusions towards multiple women, in addition to disorganized speech and

2

ideas, odd behaviors, and mood disorder symptoms such as depression with acts of aggression. She noted that W.T. drinks hand sanitizer, eats out of the trash, and eats staples that he finds on the ground in an effort to increase his iron intake. She further noted that W.T. adamantly denies having any type of psychotic disorder and is "relatively inconsistent" about taking his medication. Dr. Geoffrey-Dallery expressed particular concern regarding W.T.'s erotomanic delusions towards a woman dating back to 1980. Although a no-contact order is in place, W.T. expressed that he has no intention of stopping his attempts to contact her. Dr. Geoffrey-Dallery also testified that W.T. presents a substantial likelihood of being rehospitalized if released and that he is not ready for a less restrictive alternative inpatient placement. Her opinion was based on W.T.'s pattern of discontinuing his medications upon being released and then resuming his stalking behaviors.

Dr. Naficy, W.T.'s treating psychiatrist at WSH, also testified that he believed W.T. was gravely disabled. Dr. Naficy diagnosed W.T. with schizoaffective disorder. Dr. Naficy testified that although W.T. was not overtly delusional or psychotic in June 2019, he had recently begun exhibiting cognitive disorganization and both erotomanic and grandiose delusions. Dr. Naficy explained that W.T. sometimes refuses his medications and that W.T's psychotic symptoms increase when his dosage decreases. Dr. Naficy expressed concern that, if released, W.T. would stop taking his medication and resume trying to contact his stalking victim. As a result, W.T.'s ability to function would deteriorate and he would likely need to be returned to the hospital. W.T.'s psychiatric social worker, Pamela Simon, testified that she did not believe W.T. was ready to be placed in a less restrictive alternative (LRA). She explained that W.T. was

3

originally set to be discharged to a group home in Seattle, but that plan was put on hold because W.T. attempted to violate the no-contact order against his stalking victim.

The parties proposed identical sets of jury instructions. The jury found that W.T. has a mental disorder, that he is gravely disabled as a result, and that the best interest of W.T. and others would not be served by a LRA. Pursuant to this jury verdict, the trial court entered an order committing W.T. for up to 180 additional days of inpatient treatment at WSH. W.T. appealed the commitment order.[1]

## ANALYSIS

### Sufficiency of the Evidence

W.T. argues that his most recent 180-day commitment must be vacated because the State presented insufficient evidence that he is gravely disabled as a result of a mental disorder. We disagree.

On appeal, we "will not disturb the trial court's findings of 'grave disability' if [they are] supported by substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing." In re Det. of D.W., 6 Wn. App. 2d 751, 757, 431 P.3d 1035 (2018) (quoting In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)). "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." In re Det. of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998). Where sufficiency of the evidence is challenged, we review the facts in the light most favorable to the prevailing party. In re Det. of Kelley,

---

[1] W.T. argues, and the State agrees, that this appeal is not moot even though the challenged 180-day period has ended. Involuntary civil commitment cases are not moot on appeal even after the commitment period has ended because such commitments may be used as evidence in subsequent proceedings. See In re Det. of M.K., 168 Wn. App. 621, 629, 279 P.3d 897 (2012); RCW 71.05.245(3).

133 Wn. App. 289, 295, 135 P.3d 554 (2006).  We defer to the trier of fact on the persuasiveness of the evidence and witness credibility.  In re Matter of Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

Former RCW 71.05.020(22)[2] defines "gravely disabled" as a condition in which a person, as a result of a mental disorder,

> (a) [i]s in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

Either statutory definition of "gravely disabled" provides a basis for involuntary commitment.  La Belle, 107 Wn.2d at 202.

The verdict form in W.T.'s case did not ask the jury to specify which statutory subsection it relied on in finding that W.T. was gravely disabled.  W.T. argues that the evidence does not support a finding of grave disability under either statutory subsection. The State argues that the evidence supports a finding of grave disability under subsection (b).

To commit an individual under RCW 71.05.020(b), the State must present recent evidence that the individual has suffered a significant loss of cognitive or volitional control leading to an inability to seek essential medical care if released.  M.K., 168 Wn. App. at 630.  "Prong (b) represents a legislative attempt to permit 'intervention before a mentally ill person's condition reaches crisis proportions,' as it 'enables the State to provide the kind of continuous care and treatment that could break the cycle and restore the individual to satisfactory functioning.'"  In re Det. of A.M., 17 Wn. App. 2d 331, 335,

---

[2] LAWS OF 2018, ch. 201, § 3001.  The definition is presently codified at RCW 71.05.020(24).

487 P.3d 531 (2021) (quoting LaBelle, 107 Wn.2d at 206).  It does so by permitting the State to involuntarily treat individuals who rapidly decompensate when they stop taking their prescribed medications.  LaBelle, 107 Wn.2d at 206.

To make this showing, the State must "produce evidence of (1) severe deterioration in routine functioning as evidenced by recent proof of significant loss of cognitive or volitional control," and (2) "'a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety.'"  A.M., 17 Wn. App. 2d at 335 (quoting LaBelle, 107 Wn.2d at 208).

> It is not enough to show that care and treatment of an individual's mental illness would be preferred or beneficial or even in his best interests. To justify commitment, such care must be shown to be <u>essential</u> to an individual's health or safety and the evidence should indicate the harmful consequences likely to follow if involuntary treatment is not ordered. . . . Implicit in the definition of gravely disabled . . . is a requirement that the individual is <u>unable</u>, because of severe deterioration of mental functioning, to make a rational decision with respect to his need for treatment.

LaBelle, 107 Wn.2d at 208.

W.T. argues that the State failed its proof on subsection (b) because it presented no evidence of W.T.'s baseline functioning that would demonstrate severe deterioration in his routine functioning or recent loss of cognitive or volitional control.  W.T. contends that the only evidence introduced regarding his functioning leading up to the 2017 detention at WSH was that he was charged with stalking in 2016 and that he reported being voluntarily homeless for about 30 years.  W.T. acknowledges that he had six prior admissions to WSH, but notes that three of those were in the 1980s and that his most recent prior hospitalization at WSH was in 2009.  W.T. further contends that, once at WSH, all of the evidence established relatively stable functioning.  He points out that he adequately manages his own health care, hygiene, and finances; voluntarily attends

treatment classes; works in the greenhouse on campus; and has not required any forcible medication orders or demonstrated any assaultive behavior.

We agree with the State that clear, cogent, and convincing evidence supports a finding that W.T. was gravely disabled under subsection (b). Significantly, W.T. has recently acted on his erotomanic delusions. In August 2019, he sent a letter to the mother of the woman he has stalked for years. In October 2019, he sent a letter to a woman with the same name as his stalking victim. The record also contains testimony regarding recent incidents in which W.T. became fixated on female staff at WSH, such as keeping track of a staff member's schedule and writing another staff member a letter that concluded with "I love you." Dr. Geoffrey-Dallery testified that W.T.'s erotomanic delusions lead to a lack of volitional control and reduced capacity to control his behaviors.

The record also shows that W.T. denies suffering from schizoaffective disorder and engages in behaviors contrary to his health and safety while in the structured environment of WSH. Dr. Naficy testified that W.T. sometimes refuses his medications and that W.T's psychotic symptoms increase when his dosage decreases. He expressed concern that W.T. would stop taking his medication and resume trying to contact his stalking victim if released. W.T. acknowledges that he drinks hand sanitizer, makes his own alcohol, eats staples at WSH, and claims he will continue to drink alcohol if released.

In addition, the record shows that W.T. has been hospitalized seven times at WSH as well as many hospitalizations elsewhere in the community. Dr. Geoffrey-Dallery testified that W.T. exhibits a pattern of stopping his medications,

7

decompensating, and engaging in stalking behaviors when he is released from hospitalization. Dr. Naficy testified that this cycle can lead to a "long-term negative effect on the individual's ability to function." Although the record contains some evidence that W.T. showed improvement in certain aspects of daily functioning while at WSH, W.T.'s history of repeated hospitalizations, lack of insight into his mental disorder, erotomanic behaviors, and expressed desire to reduce or skip his medications demonstrate that harmful consequences are likely to follow if W.T. is not subjected to another 180-day period of involuntary commitment. Substantial evidence supports the jury's finding that W.T. was gravely disabled.

### Ineffective Assistance of Counsel

W.T. contends that he was denied the effective assistance of counsel because his counsel proposed a pattern jury instruction that unconstitutionally diminished the State's burden of proof.

To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the defense was thereby prejudiced. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish deficient performance, the defendant must show that counsel's performance fell below an objective standard of reasonableness. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We strongly presume that counsel's performance was reasonable. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "Reasonable conduct for an attorney includes the duty to research the relevant law." In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 140, 385 P.3d 135 (2016) (quoting Kyllo, 166 Wn.2d at 862). "When counsel's conduct can be characterized as

8

legitimate trial strategy or tactics, performance is not deficient." Kyllo, 166 Wn.2d at 863. Prejudice is established when there is a reasonable probability that but for counsel's errors, the result of the trial would have been different. In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2000). If the defendant fails to satisfy either element, the claim fails. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

The challenged jury instruction, which is essentially identical to Washington Pattern Jury Instruction (WPI) 360.06, defined the standard of proof as follows:

> KAMRAN NAFICY, M.D. and LAETITIA GEOFFREY-DALLERY, Psy.D. are the petitioners and have the burden of proving each element of their case by clear, cogent, and convincing evidence. Clear, cogent, and convincing evidence exists when the element has been shown by the evidence to be highly probable.
>
> Proof by clear, cogent, and convincing evidence requires a greater showing than is required under the "preponderance of the evidence" standard that is used in many other civil cases. Preponderance of the evidence exists when an element has been shown to be more probably true than not true.
>
> On the other hand, proof by clear, cogent, and convincing evidence does not require as great a showing as is required under the proof "beyond a reasonable doubt" standard used in criminal cases. Reasonable doubt means such a doubt as exists in the mind of a reasonable person after fully, fairly, and carefully considering all the evidence or lack of evidence.
>
> "Preponderance of the evidence" and "beyond a reasonable doubt" are defined here solely to aid you in understanding the meaning of "clear, cogent and convincing" evidence.
>
> The respondent does not have the burden to prove or disprove any element of the case.

See 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 360.06 (7th ed. 2019).

9

W.T. asserts that WPI 360.06 misstates the burden of proof in a criminal case by failing to expressly state that the defendant's guilt must be proved <u>beyond</u> a reasonable doubt, thereby reducing the level of proof necessary to meet the standard for clear, cogent, and convincing evidence in his case.  He relies on <u>Involuntary Treatment of A.J.</u>, 196 Wn. App. 79, 84, 383 P.3d 536 (2016), in support of his claim that counsel's performance was deficient for proposing it.

 In <u>A.J.</u>, the appellant challenged WPI 360.06 on the same basis as W.T.  196 Wn. App. at 82-83.  Division Three concluded that the appellant did not establish that counsel was ineffective:

> It is not deficient representation to fail to object when the court gives the jury a pattern jury instruction.  <u>See</u> <u>State v. Studd</u>, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999) (finding counsel was not ineffective for proposing a then-unquestioned pattern jury instruction). However, though we find counsel provided effective representation, A.J.'s suggestion that the instruction could be improved is well taken. The Washington Pattern Instructions Committee should consider revising the instruction to make clear that under the reasonable doubt standard the jury must find the essential facts <u>beyond</u> a reasonable doubt.

<u>A.J.</u>, 196 Wn. App. at 84.

W.T., noting that <u>A.J.</u> was published approximately three years before his commitment trial, argues that his counsel should have been on notice that WPI 360.06 misstated the burden of proof.  In <u>Kyllo</u>, our Supreme Court held that defense counsel was ineffective for proposing a pattern jury instruction that lowered the State's burden of proof, where counsel should have realized that several recent appellate decisions held the instruction was incorrect.  166 Wn.2d 187.  But the <u>A.J.</u> court did not hold that WPI 360.06 was defective, invalid, or unconstitutional.  It merely agreed that the instruction "could be improved."  196 Wn. App. at 84.  Although we agree with Division Three that

that the WPI Committee should consider revising WPI 360.06, we are unwilling to conclude that counsel was ineffective for proposing it.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Andrus, A.C.J._          _Appelwick, J._