IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| In the Matter of the Detention of | ) ) | No. 39531-6-III |
| M.G.-M. | ) ) ) ) | UNPUBLISHED OPINION |

FEARING, C.J. — The superior court involuntarily committed M.G.-M. for fourteen days based on a grave disability. The court made oral findings, but its written findings of fact lack details. The State concedes insufficient findings support the order of commitment and joins M.G.-M. in asking for reversal. We concur.

FACTS

This appeal concerns a second petition for involuntary commitment of M.G.-M. An important history precedes the petition, filed in February 2023. In January 2023, law enforcement paid for M.G.-M. to stay the night in an Ephrata hotel. The hotelier expelled M.G.-M. after she pulled a fire alarm. Law enforcement then found M.G.-M., swaddled in a blanket, wandering the highway.

In January 2023, the superior court entertained the State's first petition for involuntary commitment of M.G.-M. for fourteen days at the American Behavioral Health Systems Wenatchee clinic. During her stay at the mental health hospital, M.G.-M.

often failed to communicate with hospital staff. At the end of the two weeks, she refused to engage in voluntary treatment.

Heath Barkley, a licensed mental health professional at American Behavioral Health Systems, diagnosed M.G.-M. with "other specified schizophrenia." Report of proceedings (RP) at 5-6. According to Barkley, M.G.-M. suffers from a "[g]rave disability" that precludes her from living safely outside the mental health hospital. During interviews of M.G.-M. by Barkley, M.G.-M. exhibited delusional behavior, including spinning, whistling, and hand gestures. M.G.-M. mistakenly believed her family was dead. She engaged in hallucinations involving the spirit world.

PROCEDURE

On February 8, 2023, the State, through Heath Barkley, filed another petition seeking to involuntarily commit M.G.-M. for another fourteen days based on a "grave disability." Clerk's Papers (CP) at 1. During a February 9 hearing, Heath Barkley testified that he filed the petition based on his review of previous petitions, M.G.-M.'s behavior in the Parkside unit, interviews he conducted personally, and interviews conducted by others. Barkley averred that M.G.-M., if released to the community, would fail to attend appointments or obey conditions of a less restrictive alternative.

The superior court found by a preponderance of evidence that M.G.-M. suffered from a mental health disorder that created a grave disability. The court expressed worry that M.G.-M. was deteriorating.

2

The findings, conclusions, and order of commitment contain little substantive

information.  A section of the findings reads:

> 4.  Reasons for Commitment. Petitioner has proven by a
> preponderance of the evidence: that Respondent suffers from the following
> behavioral health disorder/s. . . .
> . . . .
> [x] Mental disorder: F28 - Other Specified Schizophrenia Spectrum and
> Other Psychotic Disorder.

CP at 25.  The superior court placed a check mark by the form language that reads:

M.G.-M.'s

> condition is such that [she], as the result of a behavioral health
> disorder:
> . . . .
> manifests severe deterioration in routine functioning evidenced by repeated
> and escalating loss of cognitive or volitional control over actions and is not
> receiving such care as is essential for health and safety.

CP at 26.  The findings added:

> [x] Less restrictive alternative treatment is not in the best interest of
> the Respondent or others. (Explain:) the Respondent has failed to
> participate in scheduled therapeutic sessions.  She also requires more time
> to engage in treatment, therapeutically and medically stabilize and gain
> insight regarding her mental health.

CP at 26.

## LAW AND ANALYSIS

### Mootness

We observe that the superior court entered M.G.-M.'s challenged fourteen-day

involuntary commitment order a year ago.  The State does not argue mootness, however.

In *In re Detention of Chorney*, 64 Wn. App. 469, 825 P.2d 330 (1992), Division One of this court ruled that, despite the appeal's mootness, the court would hear the appeal from an involuntary commitment order because of the raising of an issue of substantial public importance. Later, Division One of this court described an appeal of such an order "technically moot," but determined to hear the appeal because of the raising of an issue of substantial public importance. *In re Detention of H.N.*, 188 Wn. App. 744, 750, 355 P.3d 294 (2015). This court, in *In re Detention of H.N.*, also noted the involuntary commitment order's future adverse ramifications. Division Two of this court held that an involuntary commitment order that has since expired is not moot because of adverse consequences attended to future involuntary commitment proceedings. *In re Detention of M.K.*, 168 Wn. App. 621, 279 P.3d 897 (2012) (published in part).

We agree with Division Two's approach in *In re Detention of M.K.* Because of future adverse consequences to M.G.-M., her appeal is not moot and not even technically moot. A case lies moot when all questions are merely academic. *Harke v. Harke*, __Wn. App.2d __, __, 543 P.3d 829(2024). A patient's appeal survives a mootness challenge when an order of involuntary commitment carries a significant collateral consequence. *In re Involuntary Commitment of M.*, 2020 ME 99, 237 A.3d 190, 194-95.

4

Findings of Grave Disability

In Washington, the State may involuntarily commit an individual for mental health treatment only under limited circumstances listed in RCW 71.05.240. *In re Detention of A.C.*, 1 Wn.3d 731, 735, 533 P.3d 81 (2023). A court may grant a petition for involuntary commitment if the State proves, by a preponderance of the evidence, "that the person, as a result of a mental disorder, presents a likelihood of serious harm, or is gravely disabled." RCW 71.05.240(4)(a); *In re Detention of H.N.*, 188 Wn. App. 744, 762 (2015). A person is "gravely disabled," when, as a result of a behavior health disorder, she:

> (a) is in danger of serious physical harm resulting from a failure to provide for [her] essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidence by repeated and escalating loss of cognitive or volitional control over [her] action and is not receiving such care as is essential for [her] health or safety.

RCW 71.05.020(25).

If the State seeks an involuntary commitment based on a "grave disability," it must prove a factual basis for concluding that an individual "manifests severe [mental] deterioration in routine functioning." *In re Detention of M.K.*, 168 Wn. App. 621, 627 (2012) (published portion). Such evidence must include recent proof of significant loss of cognitive or volitional control. *In re Detention of M.K.*, 168 Wn. App. 621, 630 (2012) (unpublished portion). In addition, the evidence must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, care

essential for her health or safety. *In re Detention of M.K.*, 168 Wn. App. 621, 630 (2012) (unpublished portion). The court may not involuntarily commit one simply because treatment of an individual's mental illness would be preferred, beneficial, or even in best interests. *In re Detention of M.K.*, 168 Wn. App. 621, 630 (2012) (unpublished portion). The State must show care and treatment to be essential to an individual's health or safety and the evidence must identify the harmful consequences likely to follow if involuntary treatment is not ordered. *In re Detention of M.K.*, 168 Wn. App. 621, 630 (2012) (unpublished portion).

An individual's mental illness does not necessarily render her incapable of making a rational choice with respect to her need for treatment. *In re Detention of M.K.*, 189 Wn. App. 621, 630 (2012) (unpublished portion). The definition of "gravely disabled" connotes that the individual is unable, because of severe deterioration of mental functioning, to make a rational decision with respect to her need for treatment. *In re Detention of LaBelle*, 107 Wn.2d 196, 208, 728 P.2d 138 (1986). This requirement ensures that a connection exists between proof of severe deterioration in routine functioning and proof that such person so affected lacks the care essential for health or safety. *In re Detention of LaBelle*, 107 Wn.2d 196, 208 (1986).

A court rule adds a procedural requirement to an involuntary commitment proceeding. MPR 3.4(b) declares:

6

No. 39531-6-III
*In re Detention of M.G.M.*

> Findings and Conclusions. Unless the matter is tried to a jury, the
> court shall make and enter findings of fact and conclusions of law

(Boldface omitted.)

When a court rule requires findings of fact, the findings must be sufficiently specific to permit meaningful review. *In re Detention of LaBelle*, 107 Wn.2d 196, 218 (1986). The findings should at least be sufficient to indicate the factual bases for the ultimate conclusions. *In re Detention of LaBelle*, 107 Wn.2d 196, 218 (1986). The requirement of findings and conclusions ensures the trial judge fully and properly reviewed all issues in the case before she decides it and allows the parties and this court on appeal to know the bases of the judge's decision. *In re Detention of LaBelle*, 107 Wn.2d 196, 218 (1986). Standardized and general language generally does not suffice. *In re Detention of LaBelle*, 107 Wn.2d 196, 219 (1986). Boilerplate findings, without more, fail to permit meaningful appellate review. *In re Detention of G.D.*, 11 Wn. App. 2d 67, 73, 450 P.3d 668 (2019). Even when oral rulings offer more detail, they cannot cure inadequate written findings. *In re Detention of G.D.*, 11 Wn. App. 2d 67, 70 (2019).

In *In re Detention of LaBelle*, 107 Wn.2d 196, 219 (1986), the Supreme Court reversed an involuntary commitment because the findings of fact failed to identify the factual bases for the trial court's ultimate conclusion of grave disability. In *In re Detention of M.K.*, 168 Wn. App. 621 (2012), this court examined whether "check the box" findings were sufficient. The order contained only check marks on a preprinted

7

document and one additional sentence.  Whereas the oral ruling provided more detail, the court vacated the order because required findings did not support the conclusions.

The State concedes that M.G.-M.'s written order falls short under MPR 3.4(b). We observe that the final order lacks the basis for finding that M.G.-M. was not a good faith volunteer, the basis for finding a grave disability, and the basis for a conclusion that a less restrictive alternative is insufficient beyond a lack of participation in sessions.

CONCLUSION

We reverse M.G.-M.'s order of involuntary commitment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Cooney, J.

_____
Lawrence-Berrey, J.

8